MARY McCOY, Widow of Arthur Matthews, Decedent, *et al.*, Appellants, v. THE INDUSTRIAL COMMISSION *et al.* (Ceres Terminals, Inc., Appellee).

First District (Industrial Commission Division)    No. 1—01—4223WC

Opinion filed September 26, 2002.—Rehearing denied January 13, 2003.

Katz, Friedman, Eagle, Eisenstein & Johnson, of Chicago (Richard K. Johnson, of counsel), for appellants.

Garofalo, Schreiber, Hart & Storm, Chtrd., of Chicago (Gregory P. Sujack, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Mary McCoy, the surviving spouse of Arthur Matthews (decedent), and Irene Parker, as guardian for Anthony Hampton, appeal from the circuit court's order confirming a decision of the Industrial Commission (Commission) denying their consolidated claims for benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)) against the decedent's employer, Ceres Terminals, Inc. (Ceres).

The Commission based its denial of the claims upon its finding that it lacked jurisdiction to hear them. For the reasons that follow, we reverse the circuit court's order and remand this cause to the Commission for further proceedings.

On October 21, 1998, McCoy filed an application for adjustment of claim under the Act, seeking benefits from Ceres. That same day, Irene Parker, as guardian for Anthony Hampton, alleged to be the decedent's son, also filed an application for adjustment of claim under the Act, seeking benefits from Ceres. Subsequently, after DNA testing excluded the possibility that the decedent fathered Hampton, Parker amended her claim and proceeded upon the theory that the decedent stood *in loco parentis* to Hampton. The two claims were consolidated. The following facts are taken from the evidence presented at the arbitration hearing conducted in connection with the consolidated claims.

Robert Leonard testified that he is a longshoreman and a business agent for Local 19 of the International Longshoreman Association, of which the decedent was a member. A longshoreman's duties include loading and unloading ships. When an employer needs longshore workers, it calls Local 19 and requests them. Jobs are assigned on the basis of seniority and type of skills.

On September 25, 1998, the decedent was working for Ceres, a stevedoring company. On that date, Valerie Barber, an employee of A&R Security, was assigned to provide security for a ship docked in Lake Michigan in the vicinity of 95th Street and Ewing Avenue. Barber's evidence deposition was introduced into evidence at the hearing.

Barber testified that, around 4 p.m., the decedent was on the dock at the stern of the ship, in a squatting position, untying the ship's lines from a cleat as the ship was about to leave. The ropes were tangled up around the cleat, and the decedent was trying to untangle them. In the incident report she submitted to her employer, dated October 1, 1998, Barber stated that, while the decedent was squatted down attempting to untangle the ropes, his foot slipped beneath him and he fell into the water. At her deposition, Barber testified that, as the decedent was attempting to untangle the rope, members of the ship's crew were pulling in the rope, and the decedent fell facedown into the water. Asked what caused the decedent to fall into the water, Barber responded:

> "I think when they [were] pulling the rope back up on the ship they had—the rope was loosened and as they [were] pulling the rope around the thing he was trying to untangle the rope and his leg had slipped and they [were] pulling it and that is how he went down in that water."

Upon further questioning, Barber again testified that the decedent did not get tangled in the ropes at all. She testified that, as the decedent was attempting to untangle the ropes from the cleat, people on the ship were winding up the ropes "and as they *** [were] pulling it up, he slipped and fell." Barber acknowledged that, on March 25, 1999, counsel for the claimants interviewed her regarding the incident. Based on her statements, counsel asked her if he could add the following handwritten sentence to her typewritten incident report: "The line from the freighter pulled him [the decedent] into the water, I saw it happen." Barber acquiesced and initialed the change. Barber testified that the statement that she allowed counsel to add to her incident report is true. Later, when asked if the rope dragged the decedent into the water, Barber stated: "I think if they wouldn't have been pulling the rope back to the ship he would have been still up there."

Barber testified that she did not know whether the decedent hit anything as he fell into the water. After falling in the water, he surfaced "head up fighting for his life." According to Barber, the decedent was not wearing a life jacket and appeared to be unable to swim. The post-mortem examination report and the death certificate both list the cause of the decedent's death as drowning.

On July 14, 2000, the arbitrator issued a decision in which he found that the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. § 901 *et seq.* (1994)) provided the exclusive source of jurisdiction over the consolidated claims and denied the claims. The claimants filed a petition seeking review of the arbitrator's decision by the Commission. In a decision issued February 21, 2001, the Commission, with one commissioner dissenting, affirmed and adopted the arbitrator's decision. The claimants sought judicial review, and the circuit court of Cook County confirmed the Commission's decision. This appeal followed.

On appeal, the claimants contend that the Commission erred in finding that it lacks jurisdiction over their consolidated claims for benefits under the Act. The claimants do not contest the fact that federal jurisdiction over their claims exists pursuant to the LHWCA. Rather, relying on the United States Supreme Court's decisions in *Davis v. Department of Labor & Industries*, 317 U.S. 249, 87 L. Ed. 246, 63 S. Ct. 225 (1942), and *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 65 L. Ed. 2d 458, 100 S. Ct. 2432 (1980), they argue that their claims fall within a zone of concurrent federal and state jurisdiction.

Article III, section 2, of the United States Constitution provides that federal courts shall have jurisdiction over "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. In 1917, prior to the enactment of the LHWCA, the United States Supreme Court is-

sued its decision in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 217-18, 61 L. Ed. 1086, 1099, 37 S. Ct. 524, 529-30 (1917), where it held that state workers' compensation laws could not constitutionally be applied to workers injured on navigable waters as such would conflict with general maritime law, which fell within the jurisdiction of federal courts. This left workers injured on navigable waters without a source of compensation. Over time, the Court developed the "maritime but local" exception to the rule announced in *Jensen*. Pursuant to this exception, a worker injured on navigable waters could receive compensation under state laws if his employment had no direct connection to navigation or commerce and the application of the local compensation law would not materially affect the uniformity of maritime law. *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 476-77, 66 L. Ed. 321, 324, 42 S. Ct. 157, 158 (1922); *Western Fuel Co. v. Garcia*, 257 U.S. 233, 242, 66 L. Ed. 210, 214, 42 S. Ct. 89, 90 (1921).

Significantly, although the *Jensen* rule provided that federal courts had exclusive jurisdiction over claims for injuries occurring on the water, state laws could be applied where the injury occurred on land. *State Industrial Comm'n v. Nordenholt Corp.*, 259 U.S. 263, 272-76, 66 L. Ed. 933, 936-38, 42 S. Ct. 473, 474-75 (1922). When the LHWCA[1] was enacted in 1927, it provided coverage for "disability or death [that] results from an injury occurring upon the navigable waters of the United States (including any dry dock)" if coverage could not validly be provided through state workers' compensation laws. 33 U.S.C. § 903(a) (1928). Thus, a maritime employee injured on land was still afforded no protection under federal law. Further, as the LHWCA provided coverage only if no state coverage existed, employees who could recover under state law, such as those falling within the maritime but local exception, could not recover under the LHWCA. *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates*, 459 U.S. 297, 307, 74 L. Ed. 2d 465, 474, 103 S. Ct. 634, 642 (1983). As the Supreme Court later observed, under certain circumstances, workers were put in the position of making "a perilous jurisdictional 'guess'" before filing a claim and employers were uncertain whether their contributions to state funds would protect them from liability. *Perini North River Associates*, 459 U.S. at 307, 74 L. Ed. 2d at 474-75, 103 S. Ct. at 642.

In *Davis v. Department of Labor & Industries*, 317 U.S. 249, 87 L.

---

[1]In its original form, the act was entitled the Longshoremen's and Harbor Worker's Compensation Act. 33 U.S.C. § 901 (1928). In 1984, the word "Longshore" was substituted for the word "Longshoremen's" in the title. 33 U.S.C. § 901 (1994).

Ed. 246, 63 S. Ct. 225 (1942), the Supreme Court acknowledged the uncertainty that existed as to the circumstances under which state law would apply. It noted that, while harbor and longshore workers were clearly covered under the LHWCA, employees such as the decedent in that case, a steelworker engaged in dismantling a drawbridge, "occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." *Davis*, 317 U.S. at 253, 87 L. Ed. at 248, 63 S. Ct. at 227. The Court created a "twilight zone" into which such factually questionable cases would fall and over which federal and state courts would effectively have concurrent jurisdiction. *Davis*, 317 U.S. at 255-58, 87 L. Ed. at 249-51, 63 S. Ct. at 228-30; *Sun Ship*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.

Thus, from the time the LHWCA was enacted in 1927 up until 1972, when the act was amended, there existed three zones of jurisdiction with regard to maritime injury cases. Claims for injuries suffered upon navigable waters by workers engaged in traditional maritime employment fell within the exclusive jurisdiction of the *federal courts* and were governed by the LHWCA. *Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436. Concurrent federal and state jurisdiction existed over claims for injuries falling within the maritime but local exception. *Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436. Finally, injuries suffered on land fell within the exclusive jurisdiction of the states. *Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436.

In 1972, Congress amended the LHWCA, expanding its scope landward, so that it now provides coverage for:

> "disability or death [that] results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a) (1994).

Further, the definition of an employee for purposes of the LHWCA was changed to require that the worker seeking coverage actually be employed in a form of traditional maritime employment. 33 U.S.C. § 902(3) (1994). Another significant change included among the 1972 amendments was the deletion from the LHWCA of the provision that coverage thereunder was available only if recovery could not validly be provided under state workers' compensation law, a provision that the United States Supreme Court had already effectively read out of the LHWCA in *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 8 L. Ed. 2d 368, 82 S. Ct. 1196 (1962).

As a result of the 1972 amendments, the test for coverage under the LHWCA shifted from what had been strictly a test as to the situs of the injury, *i.e.*, whether the injury occurred on navigable waters, to a test as to both the situs of the injury, with an expanded definition of the situs for which coverage would be provided, and the status of the employee, *i.e.*, whether the injured held the status of an employee within the amended definition of the LHWCA. *Perini North River Associates*, 459 U.S. at 314, 74 L. Ed. 2d at 479, 103 S. Ct. at 645.

The claimants concede that the decedent, a longshoreman, falls within the LHWCA's definition of an employee and thus satisfies the status test for coverage under the federal act. Further, although they contend that the decedent's injury occurred on the dock rather than on navigable waters as the Commission found, they admit that either location satisfies the situs test. As stated earlier, though, while the claimants admit that federal jurisdiction over their claim exists, they assert that the Commission also has jurisdiction. Their argument in this regard is premised upon their assertion that the decedent's injury occurred on land rather than on navigable waters. The distinction is one not without difference. Rather, the question of where the decedent's injury occurred is determinative of the jurisdictional issue presented.

■ In *Wells v. Industrial Comm'n*, 277 Ill. App. 3d 379, 660 N.E.2d 229 (1995), the claimant was a longshoreman injured while working in the hold of a ship docked in Lake Michigan. The employer appealed from the Commission's decision awarding benefits, contending that the Commission lacked jurisdiction. This court agreed with the employer and reversed the Commission's benefit award, stating:

> "As previously noted, under the *Jensen* doctrine, States may not constitutionally apply their workers' compensation statutory schemes to maritime employees who are performing traditional maritime functions and are injured over navigable waters. [Citations.] None of the modifications to the *Jensen* doctrine have changed this principle. *Jensen* has not been overruled, it has simply been narrowed. [Citations.] Since *Jensen* has not been overruled, it remains binding on this court. [Citation.] *** Therefore, maritime employees who are performing traditionally maritime functions and are injured over navigable waters cannot recover benefits under this State's compensation law." *Wells*, 277 Ill. App. 3d at 386.

The decedent in the instant case, a longshoreman, was clearly engaged in traditional maritime functions at the time that he was injured. Thus, if he was injured on navigable waters, the instant case is governed by *Wells*, the *Jensen* rule applies, and any claim for benefits in connection with his death falls exclusively under federal jurisdiction

and is governed by the LHWCA. Such is not the case, though, if the injury resulting in the claimant's death occurred on land.

As discussed, prior to the 1972 amendments to the LHWCA, coverage for land-based injuries had been relegated solely to state law. The extension of coverage under the LHWCA to certain land-based injuries, therefore, raised the question of whether states still had jurisdiction over claims for such injuries. The Supreme Court answered this question affirmatively in *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 65 L. Ed. 2d 458, 100 S. Ct. 2432 (1980). *Sun Ship* involved the consolidated cases of five workers, each of whom was injured on land while engaged in shipbuilding or ship-repair activities. In the words of the Supreme Court: "The single question presented by these consolidated cases is whether a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) as amended in 1972. [Citation.] We hold that it may." *Sun Ship*, 447 U.S. at 716, 65 L. Ed. 2d at 460, 100 S. Ct. at 2434. Noting that Congress had not indicated that federal jurisdiction over the expanded areas of coverage was to be exclusive and that previous Court decisions had already established zones of concurrent jurisdiction in certain situations, the Court concluded that the 1972 amendments extending the jurisdiction of the LHWCA supplements state workers' compensation laws rather than supplants them. *Sun Ship*, 447 U.S. at 719-20, 65 L. Ed. 2d at 462-63, 100 S. Ct. at 2436. Accordingly, following the 1972 amendments to the LHWCA, federal and state courts have concurrent jurisdiction over those land-based injuries falling within the coverage of the federal act.

If the injury resulting in the death of the decedent here occurred on water, then the Commission does not have jurisdiction over the consolidated claims brought before it and its order must stand. If, however, the injury resulting in the decedent's death occurred on the dock, as the claimants assert, then the Commission has jurisdiction over the consolidated claims and its order denying those claims cannot stand. We must, therefore, determine where the injury occurred.

The Commission stated that "[there was no evidence of injury while decedent was on land." It found that the proximate cause of the decedent's death was drowning, which occurred in the navigable waters. Ceres argues that the Commission's finding in this respect was correct, noting that the death certificate and postmortem examination report both indicate that the cause of the decedent's death was drowning. The claimants, however, contend that the injury resulting in the decedent's death did not occur on or in the navigable waters, but on the dock. The LHWCA provides coverage for "disability

or death [that] results from an injury occurring upon the navigable waters (including any adjoining pier ***)." 33 U.S.C. § 903(a) (1994). Thus, we must look not to the situs of the decedent's death, but to the situs of the injury from which his death resulted. We find the United States Supreme Court's decisions in *T. Smith & Son, Inc. v. Taylor*, 276 U.S. 179, 72 L. Ed. 520, 48 S. Ct. 228 (1928), and *Minnie v. Port Huron Terminal Co.*, 295 U.S. 647, 79 L. Ed. 1631, 55 S. Ct. 884 (1935), to be instructive.

In *Taylor*, a longshoreman was standing on the wharf when a sling being used to unload cargo from a ship struck him and knocked him into the water, where his body was later found. The Court was faced with the question of whether the injury occurred on the water, in which case federal jurisdiction would be exclusive, or on land, in which case the state workers' compensation law would be applied. *Taylor*, 276 U.S. at 180-81, 72 L. Ed. at 522, 48 S. Ct. at 229. The Court held:

> "The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land. It was the sole, immediate and proximate cause of his death. [Citation.] The substance and consummation of the occurrence which gave rise to the cause of action took place on land." *Taylor*, 276 U.S. at 182, 72 L. Ed. at 522-23, 48 S. Ct. at 229.

Ceres suggests that *Taylor* is distinguishable from the instant case. It seizes upon the Court's statement that the blow by the sling "was the sole, immediate and proximate cause" of the worker's death and suggests that this means that the worker did not drown but died of injuries he sustained when the sling hit him. The actual cause of the worker's death in *Taylor*, whether drowning or injuries from the sling, is never stated. We do not, however, believe this would have affected the Court's decision as to the situs of the injury. In *Minnie*, a longshoreman was working on the deck of a ship when a hoist being used to lift cargo from the hatch struck him and knocked him onto the wharf. The state commission found that, as the worker's injury was caused by his fall on the wharf, it was land based. *Minnie*, 295 U.S. at 647-48, 79 L. Ed. at 1631-32, 55 S. Ct. at 884. The Supreme Court, however, found that it was the blow that the claimant received from the hoist that gave rise to the cause of action and that "the maritime character of that cause of action [was] not altered by the fact that the petitioner was thrown from the vessel to the land." *Minnie*, 295 U.S. at 648, 79 L. Ed. at 1632, 55 S. Ct. at 885.

■ In the instant case, the decedent was working on the dock untying the ropes of a ship that was about to leave shore. As he was attempting to untangle the ropes, which were caught on the cleat

around which they were wrapped, members of the ship's crew began to pull in the ropes. The decedent slipped and fell into the water, where he subsequently drowned. Applying the reasoning of the Supreme Court in *Taylor* and *Minnie*, we find that the claimant's slip on the dock gave rise to his claim for benefits. As this act took place on land, we find that his injury is land based. Furthermore, pursuant to the Supreme Court's holding in *Sun Ship*, we find that the Commission has jurisdiction over the consolidated claims before it and erred in denying those claims.

We note that the claimants also argued that their consolidated claims fell within the twilight zone of concurrent jurisdiction which the Supreme Court created in *Davis*. The claimants' reliance on *Davis* is both misplaced and unnecessary. It is misplaced because the twilight zone of which the *Davis* court spoke was for cases in which there was uncertainty as to whether the nature of the claimant's employment was such that his injuries would fall under the maritime but local doctrine. Here, the decedent's employment was clearly traditional maritime employment and, thus, the twilight zone does not apply. The claimants' reliance on *Davis*, however, is unnecessary because, pursuant to the Court's holding in *Sun Ship*, the Commission has jurisdiction over the claims at issue.

For the foregoing reasons, we reverse the order of the circuit court confirming the Commission's decision and remand this matter to the Commission for further proceedings.

Reversed and remanded.

McCULLOUGH, P.J., and O'MALLEY, HOLDRIDGE, and GOLD-ENHERSH, JJ., concur.