CECIL UPHOLD, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (National Maintenance & Repair, Appellee).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—07—0669WC

Opinion filed September 24, 2008.

Thomas C. Rich, of Thomas C. Rich, P.C., of Fairview Heights, for appellant.

Eugene F. Keefe, of Keefe, Campbell & Associates, of Chicago, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

At issue in this case is whether claimant, Cecil Uphold, may pursue workers' compensation benefits under the Illinois Workers' Compensation Act (ILWCA) (820 ILCS 305/1 *et seq.* (West 2000)) or whether his claim for relief is preempted by federal law, specifically, the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. §901 *et seq.* (2004)). The arbitrator, relying on *Davis v. Department of Labor & Industries*, 317 U.S. 249, 87 L. Ed. 246, 63 S. Ct. 225 (1942), determined that claimant could proceed under either the ILWCA or the LHWCA. A majority of the Workers' Compensation Commission (Commission) affirmed and adopted the decision of the arbitrator. However, the circuit court of Madison County set aside the Commission's decision. For the reasons that follow, we affirm the judgment of the circuit court.

## I. BACKGROUND

Claimant filed an application for adjustment of claim on October 26, 2005, alleging that he injured his mid-to-low back while working for respondent, National Maintenance and Repair. Prior to the arbitration hearing, respondent filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction." In the motion, respondent argued that subject matter jurisdiction over claimant's workers' compensation claim lies exclusively with the LHWCA.

Meanwhile, the matter proceeded to an arbitration hearing, at which claimant testified that his duties for respondent involved cleaning and vacuuming barges. The injury at issue occurred on August 12, 2005, while claimant was working on a vessel known as the "Harry Tulodzieski." Claimant described the occurrence as follows:

"I was in the bottom of the boat. I was working with very bad lighting[;] I was having to use a flashlight. I had to walk close to a bulkhead. Didn't realize I was close to the bulkhead. The vacuum hose I was using stuck to the bottom. You have to use basically brute force to break the vacuum and when I used the force to break the vacuum I smashed my back against a pipe sticking out from the wall. It immediately threw me forward from the impact catching myself on the bulkhead and a structure beam."

At the time of the injury, claimant had been employed by respondent for four months. Claimant stated that prior to the injury at issue, he had never sustained an injury to his low back or sought treatment for any low-back condition. Claimant also stated that he had never filed a claim under either the ILWCA or the LHWCA for a low-back injury.

Claimant described respondent as a "local" company based in Hartford, Illinois, which offers a variety of services, including rail repair, marine repair, barge rebuilding, and barge cleaning. Claimant testified that "portions" of respondent's business are land based and "purely local" in nature. Claimant related that his position is based in Hartford, that he clocks in and out of work there, and that he receives his paycheck there. Claimant stated that in his position with respondent he has never loaded or unloaded materials from a boat as a longshore employee. Further, his position does not require him to tie or untie barges or to assist anyone in performing those duties. Claimant added that he is not and has never been a member of the longshoremen's union. However, claimant is a member of Local 482, which is part of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers of the AFL-CIO. Claimant also testified that the boats on which he works do not navigate the water while he is performing his duties and that he has never performed any of his job duties "when the boat hasn't been dry docked and anchored and tied to the shore."

On cross-examination, claimant elaborated on his job duties, explaining that he was assigned to respondent's "gas free plant," where hazardous materials such as oil, water, gasoline, and diesel fuel are removed from the bottom of any vessel prior to it being placed in dry dock for repair. In addition, during cross-examination, the following colloquy occurred between claimant and respondent's attorney:

"Q. Okay. Now I'll show you what we've marked as Respondent's Number 4 for identification. Is that an example of what a dry dock is?

A. I would assume, yes, because I'm not a dry dock worker.

Q. I'm not asking you that but I'm just saying—well, again, I'm not trying to put words in your mouth. The Hank Henry that you were talking about.

A. Harry Tulodzieski.

Q. Okay. Was that in a dry dock like this?

A. No.

Q. Okay.

A. Not yet.

Q. It was just floating on the Mississippi River going up and down—

A. Yes.

Q. —when you were doing the vacuuming?

A. Yes.

Q. Okay. So it was just floating on the Mississippi. Was it attached to a barge or was it attached to shore?

A. Attached to the barge which is attached to shore."

Based on the foregoing evidence, the arbitrator determined that jurisdiction under the ILWCA was proper in this case. The arbitrator reasoned:

"Because of the jurisdictional dilemma that can result between the operation of the [ILWCA] and the LHWCA, the Supreme Court in *Davis* [citation] created a new concept it articulated as the 'twilight zone', when employment is 'maritime-but-local.' The Court recognized that despite the many cases involving maritime-but-local doctrine [*sic*], it was unable to give any guiding or definite rule to determine the extent of state power in advance of litigation. To remedy the jurisdictional dilemma, the Supreme Court created the 'twilight zone' that, in doubtful cases, there is a regime of concurrent jurisdiction and an injured worker can elect a federal or state remedy. The Supreme Court noted that 'there is \*\*\* clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements.' [Citation.]

The law is clear that a worker injured on navigable waters can receive workers' compensation benefits under state laws if his employment has no direct connection to navigation or commerce and the application of the local compensation law does not materially affect the uniformity of maritime law.

Based on all of the evidence set forth herein, [claimant's] claim clearly falls within the 'twilight zone' as described by the courts. As [claimant's] employment at this local repair facility is 'maritime but local' in nature, there exists concurrent subject matter jurisdiction of the [ILWCA] and the [LHWCA] allowing him to elect a federal or state remedy in seeking compensation for his claim of injury."

The arbitrator further found that claimant sustained an injury arising out of and in the course of his employment with respondent and that his condition of ill-being is causally connected to his employment. The arbitrator awarded claimant 18⁶/₇ weeks of temporary total disability benefits and $8,309.60 in medical expenses.

A majority of the Commission summarily affirmed and adopted the decision of the arbitrator and remanded the cause pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980). Commissioner Mario Basurto dissented. He would have found that the Commission

did not have jurisdiction because claimant was working as a ship laborer performing tasks related to maintenance and repair of a vessel while it was floating upon a navigable waterway. Commissioner Basurto acknowledged testimony that the vessel upon which claimant was working was moored to a barge. However, he did not find this fact sufficient to categorize claimant as having sustained a land-based injury, which would have been subject to jurisdiction under the ILWCA. The circuit court of Madison County set aside the Commission's decision. Thereafter, claimant filed the present appeal.

## II. ANALYSIS

On appeal, claimant argues that, contrary to the holding of the circuit court, his claim under the ILWCA is not preempted by the LHWCA. He insists that his case falls within the "twilight zone," and is therefore subject to concurrent jurisdiction, because, although he was injured while on navigable waters, his position was "maritime but local." Respondent replies that concurrent jurisdiction is not present in this case. Rather, respondent asserts, because claimant was injured while upon navigable waters and because he was engaged in vacuuming bilge water from the bottom of a vessel, an activity respondent classifies as traditionally maritime, his exclusive remedy lies with the LHWCA. Under the circumstances of this case, we agree that claimant's exclusive remedy lies with the LHWCA.

As a preliminary matter, we must determine the appropriate standard of review. Claimant argues that the issue presented in this appeal presents a question of fact and that the appropriate standard of review is therefore manifest weight of the evidence. Respondent counters that all relevant facts in this case are undisputed. Therefore, it asserts, the issues presented in this appeal are questions of law subject to *de novo* review. As set forth more thoroughly below, to resolve this dispute we will engage in a two-step analysis. Initially, we will determine whether there is jurisdiction under the LHWCA. If we find jurisdiction exists under the federal statute, we will then determine whether there is concurrent jurisdiction under state law. As a general matter, the former inquiry presents a mixed question of law and fact. See *Anastasiou v. M/T World Trust*, 338 F. Supp. 2d 406, 414 n.4 (E.D.N.Y. 2004) ("[W]hether someone qualifies as an 'employee' under the LHWCA is a mixed question of law and fact"); *Wellsville Terminals Co. v. Workmen's Compensation Appeal Board*, 534 Pa. 333, 334 n.1, 632 A.2d 1305, 1306 n.1 (1993) (reviewing matter as a mixed question of law and fact). However, because the facts essential to our analysis of the first inquiry are undisputed, our review involves only an application of those undisputed facts to the law. Therefore, we

review the matter *de novo. Fast Cash Financial Services v. Industrial Comm'n*, 367 Ill. App. 3d 102, 105 (2006) (noting that questions of law are subject to plenary review). Similarly, the issue whether a claim for state workers' compensation benefits is preempted by federal law presents a question of law subject to *de novo* review. See *Coppola v. Logistec Connecticut, Inc.*, 283 Conn. 1, 5, 925 A.2d 257, 260 (2007) ("Whether the state act constitutionally applies to claims involving injuries that occurred on the navigable waters of the United States is a pure question of law"). Having determined the appropriate standard of review, we now turn to the merits of this appeal.

An understanding of the parties' positions and our subsequent analysis requires an extensive review of the history of the LHWCA. Enacted in 1927, the LHWCA was a congressional response to *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 61 L. Ed. 1086, 37 S. Ct. 524 (1917), a case decided by the United States Supreme Court. The *Jensen* decision established a clear line of demarcation between state and federal jurisdiction when dealing with marine-related injuries. Citing the interest of promoting a uniform maritime law (see U.S. Const., art. III, §2 (providing that federal courts shall have "judicial Power" over "all Cases of admiralty and maritime Jurisdiction")), the *Jensen* Court held that it was unconstitutional for states to apply their workers' compensation statutes to longshoremen injured on the seaward side of the line between the shore and the sea. *Jensen*, 244 U.S. at 216-18, 61 L. Ed. at 1098-99, 37 S. Ct. at 529-30. This line between land and water became known as the *"Jensen* line." See *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates*, 459 U.S. 297, 306 n.14, 74 L. Ed. 2d 465, 473 n.14, 103 S. Ct. 634, 641 n.14 (1983). The effect of *Jensen*'s holding was that longshoremen injured on land were allowed to pursue a claim under their states' workers' compensation laws, but longshoremen injured on the seaward side of the *Jensen* line were left without a source of compensation. See *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 216, 24 L. Ed. 2d 371, 376, 90 S. Ct. 347, 350 (1969); *State Industrial Comm'n v. Nordenholt Corp.*, 259 U.S. 263, 272-73, 66 L. Ed. 933, 936, 42 S. Ct. 473, 474 (1922).

Following *Jensen*, Congress, on two occasions, enacted legislation that would have allowed application of state workers' compensation remedies seaward of the *Jensen* line. See *Wells v. Industrial Comm'n*, 277 Ill. App. 3d 379, 381 (1995). However, these attempts were struck down as unlawful delegations to the states of congressional power. *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 227, 68 L. Ed. 646, 652, 44 S. Ct. 302, 305 (1924) ("Without doubt Congress has power to alter, amend, or revise the maritime law by statutes of general applica-

tion embodying its will and judgment. This power, we think, would permit enactment of a general employers' liability law or general provisions for compensating injured employees; but it may not be delegated to the several [s]tates"); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 163-64, 64 L. Ed. 834, 840-41, 40 S. Ct. 438, 441 (1920).

Despite the Supreme Court's rejection of congressional attempts to alleviate the harsh results generated by the strict application of *Jensen*'s line of demarcation, the Supreme Court itself narrowed *Jensen*'s reach. In *Western Fuel Co. v. Garcia*, 257 U.S. 233, 242, 66 L. Ed. 210, 214, 42 S. Ct. 89, 90 (1921), and *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 476-77, 66 L. Ed. 321, 324, 42 S. Ct. 157, 158 (1922), the Court held that state remedies are available to workers injured on navigable waters where the worker's employment is "maritime and local in character." In *Grant Smith-Porter Ship Co.*, the Supreme Court explained that the claimant could proceed under state law because neither his general employment nor his duties at the time of his injury had any direct relation to navigation or commerce and, therefore, application of state law could not "materially affect any rules of the sea whose uniformity is essential." *Grant Smith-Porter Ship Co.*, 257 U.S. at 476-77, 66 L. Ed. at 325, 42 S. Ct. at 158; see also *Western Fuel Co.*, 257 U.S. at 242, 66 L. Ed. at 214, 42 S. Ct. at 90 (finding that, in certain circumstances, application of state law "will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations"). Under the doctrine developed in these cases, "if the employment of an injured worker was determined to have no direct relation to navigation or commerce, and the application of local law would not materially affect the uniformity of maritime law, then the employment would be characterized as maritime-but-local, and the State could provide a compensation remedy." *Wells*, 277 Ill. App. 3d at 382, citing *Perini*, 459 U.S. at 303, 74 L. Ed. 2d at 472, 103 S. Ct. at 639-40. Still, where an employee was injured on the navigable waters and his employment could not be categorized as "maritime but local," the employee was left without a compensation remedy. *Perini*, 459 U.S. at 306, 74 L. Ed. 2d at 474, 103 S. Ct. at 641.

In 1927, Congress, taking a cue from the Supreme Court's decision in *W.C. Dawson & Co.*, passed the LHWCA (33 U.S.C. §901 *et seq.* (1927)), which successfully established a federal compensation system for workers excluded from coverage by *Jensen*. See *Wells*, 277 Ill. App. 3d at 382. In essence, the LHWCA was a gap-filling measure for those workers to whom *Jensen* made coverage under state law unavailable. See *Coppola*, 283 Conn. at 8, 925 A.2d at 262. As originally enacted,

the LHWCA provided coverage for "disability or death [which] results from an injury occurring upon the navigable waters of the United States (including any dry dock)" if coverage "may not validly be provided by State law." 33 U.S.C. §903(a) (1927).[1] The LHWCA also contained definitions of the terms "employer" and "employee."[2] As this language suggests, the LHWCA covered only employees who were injured on actual navigable waters or any dry dock. See *Nacirema*, 396 U.S. at 219-20, 24 L. Ed. 2d at 377-78, 90 S. Ct. at 352; *Fleischmann v. Director, Office of Workers' Compensation Programs*, 137 F.3d 131, 135 (2d Cir. 1998). Thus, a maritime worker injured on land was not afforded any protection under the LHWCA; rather, he had to seek a remedy under state law. *McCoy v. Industrial Comm'n*, 335 Ill. App. 3d 723, 726 (2002). Moreover, since the LHWCA provided coverage only if no state coverage existed, employees who sustained an injury on navigable waters but could recover under state law, such as those whose employment could be characterized as maritime-but-local, could not recover under the LHWCA. *Perini*, 459 U.S. at 307, 74 L. Ed. 2d at 474, 103 S. Ct. at 642; *McCoy*, 335 Ill. App. 3d at 726.

While enactment of the LHWCA was a step forward, certain aspects of the statute proved problematic. Notably, because the LHWCA and the state workers' compensation schemes were mutually

---

[1] The full text of the 1927 version of section 903(a) (33 U.S.C. §903(a) (1927)) reads:

"(a) Compensation shall be payable under this chapter in respect [to] disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through the workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof."

[2] The term "employer" was defined as "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)." 33 U.S.C. §902(4) (1927). The term "employee" was described as a class of covered workers by exclusion: "The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." 33 U.S.C. §902(3) (1927).

exclusive, it was difficult for employees to determine whether the federal or state compensation scheme applied to a particular factual situation. See *Perini*, 459 U.S. at 307, 74 L. Ed. 2d at 474, 103 S. Ct. at 642; *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 718, 65 L. Ed. 2d 458, 461, 100 S. Ct. 2432, 2435 (1980); *Wells*, 277 Ill. App. 3d at 382. Injured workers were often compelled to make a "jurisdictional guess" before filing a claim, and if the worker initially chose the wrong statutory scheme, he potentially could be foreclosed from obtaining relief. *Sun Ship, Inc.*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435. As one court observed:

> "[M]any injured longshoremen were effectively denied recovery, since if a worker chose a state compensation remedy and was found not to fall within the 'maritime but local' exception he was often left without a remedy because he would be time-barred under LHWCA. Similarly, if a worker claimed under LHWCA and was found to fall within the 'maritime but local' exception, he had no LHWCA remedy and might be time-barred at state law. This game was particularly treacherous for injured longshoremen because judicial determinations as to what was 'maritime but local' were often fundamentally inconsistent with one another." *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 944 (3d Cir. 1990).

In an attempt to resolve this jurisdictional dilemma, the Supreme Court decided *Davis*, 317 U.S. 249, 87 L. Ed. 246, 63 S. Ct. 225.

In *Davis*, a steelworker drowned in navigable waters after falling off a barge while helping to load the barge with pieces of steel from a drawbridge that was being dismantled. The deceased's widow sought benefits under the state workers' compensation act. The Washington Supreme Court held that the state could not, consistently with the federal constitution, make an award under its state compensation law to the widow of a worker drowned in a navigable waterway. The Supreme Court reversed, not because the employment was "maritime but local," but because of a new theory. See *Perini*, 459 U.S. at 309, 74 L. Ed. 2d at 475, 103 S. Ct. at 643; *Peter*, 903 F.2d at 945. The Court recognized that the LHWCA provided exclusive coverage for harbor workers and longshoremen employed upon the navigable waters, but it found that the decedent "occup[ied] that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." *Davis*, 317 U.S. at 253, 87 L. Ed. at 248, 63 S. Ct. at 227. The Court, unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, created the "twilight zone," under which cases that are "doubtful" would fall and over which both federal and state courts could exercise concurrent jurisdiction. *Davis*, 317 U.S. at 255-58, 87 L. Ed. at 249-51, 63 S. Ct. at

228-30; see also *Sun Ship, Inc.*, 447 U.S. at 718, 65 L. Ed. 2d at 461, 100 S. Ct. at 2435.

The Supreme Court expanded this regime of concurrent jurisdiction in *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 8 L. Ed. 2d 368, 82 S. Ct. 1196 (1962). There, the Court noted that "[n]o dependable definition of the area—described as 'maritime but local,' or 'of local concern'—where state laws could apply ever emerged from the many cases which dealt with the matter." *Calbeck*, 370 U.S. at 119, 8 L. Ed. 2d at 372, 82 S. Ct. at 1199. As a result, the Court held that the LHWCA "provide[s] compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." *Calbeck*, 370 U.S. at 117, 8 L. Ed. 2d at 371, 82 S. Ct. at 1198. Thus, following *Calbeck*, concurrent jurisdiction under both the LHWCA and state workers' compensation laws also existed for injuries sustained in the maritime-but-local sphere. It is important to note, however, that neither the maritime-but-local nor the twilight-zone doctrine had any effect on exclusive federal jurisdiction in cases in which a worker is injured on navigable waters while engaged in traditional maritime activity because the essential character of such employment is not "doubtful." See *Wells*, 277 Ill. App. 3d at 386 (noting that since *Jensen* has not been overruled, it remains good law); *Wellsville Terminals Co.*, 534 Pa. at 337, 632 A.2d at 1307 ("*Davis* and *Sun Ship* have defined and narrowed the scope of *Jensen*. Nonetheless, maritime employees who are performing traditionally maritime functions and are injured over navigable waters, under *Jensen*, are constitutionally barred from recovering under any state workmen's compensation law").

In *Sun Ship*, the Supreme Court succinctly summarized the state of the law prior to 1972, when Congress amended the LHWCA:

"Before 1972, then, marine-related injuries fell within one of three jurisdictional spheres as they moved landward. At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall under the LHWCA. 'Maritime but local' injuries 'upon the navigable waters of the United States,' 33 U.S.C. §903(a), could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit within the range of federal admiralty jurisdiction—were remediable only under state law." *Sun Ship*, 447 U.S. at 719, 65 L. Ed. 2d at 462, 100 S. Ct. at 2436.

It is also significant that before Congress amended the law in 1972, individuals were entitled to coverage under the LHWCA when they satisfied a "situs" requirement, *i.e.*, they were injured on the navigable

waters of the United States. See *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 72, 62 L. Ed. 2d 225, 230, 100 S. Ct. 328, 332 (1979) (stating that before the 1972 amendments of the LHWCA, "[a] single situs requirement in §3(a) of the [LHWCA] governed the scope of its coverage"). As we will see, although the 1972 amendments to the LHWCA expanded the situs requirement and further delineated the class of workers defined as "employees" under the statute, employees who fell within the terms of coverage of the pre-1972 version of the LHWCA remained covered employees following adoption of the 1972 amendments. See *Perini*, 459 U.S. at 319, 74 L. Ed. 2d at 482, 103 S. Ct. at 648 ("Congress *** assumed that injuries occurring on the actual navigable waters were covered, and would remain covered" following enactment of the 1972 amendments).

The 1972 amendments to the LHWCA brought about significant change. As alluded to above, principal among these changes, the 1972 amendments expanded the "navigable waters" situs to include certain adjoining land areas. 33 U.S.C. §903(a) (Supp. 1972).[3] In conjunction with this expansion of the situs landward, Congress amended the definition of the individuals covered by the LHWCA.[4] As the Supreme Court observed:

"Previously, so long as a work-related injury occurred on navigable waters and the injured worker was not a member of a narrowly defined class, the worker would be eligible for federal compensation provided that his or her employer had at least one employee engaged in maritime employment. It was not necessary that the

---

[3]The 1972 version of section 903(a) of the LHWCA provided in relevant part:

"Compensation shall be payable under this chapter in respect of disability or death *** if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, [dismantling,] or building a vessel)." 33 U.S.C. §903(a) (Supp. 1972).

[4]The 1972 version of section 902(3), which defines "employee," provided:

"The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." 33 U.S.C. §902(3) (Supp. 1972).

Thus, the definition of "employee," originally one of exclusion in the 1927 version of the statute, became one of inclusion.

injured employee be so employed. [Citation.] But with the definition of 'navigable waters' expanded by the 1972 Amendments to include such a large geographical area, it became necessary to describe affirmatively the class of workers Congress desired to compensate. It therefore added the requirement that the injured worker be 'engaged in maritime employment,' which it defined to include 'any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but ... not ... a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.' " *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 264, 53 L. Ed. 2d 320, 333, 97 S. Ct. 2348, 2357 (1977), quoting 33 U.S.C. §902(3) (Supp. 1972).[5]

In addition, the 1972 amendments removed the requirement that federal compensation would be available only if recovery "may not validly be provided by State law," a provision that the Supreme Court had effectively read out of the statute in *Calbeck*. *Perini*, 459 U.S. at 314, 74 L. Ed. 2d at 479, 103 S. Ct. at 645; *McCoy*, 335 Ill. App. 3d at 727.

The effect of the 1972 amendments was to "change[ ] what had been essentially only a 'situs' test of eligibility for compensation to one looking to both the 'situs' of the injury and the 'status' of the injured." *Northwest Marine Terminal Co.*, 432 U.S. at 264-65, 53 L. Ed. 2d at 334, 97 S. Ct. at 2357; see also *P.C. Pfeiffer Co.*, 444 U.S. at 73, 62 L. Ed. 2d at 230, 100 S. Ct. at 332 (noting that the 1972 amendments to the LHWCA "replac[ed] the single-situs requirement with a two-part situs and status standard"). As indicated previously, however, the "status" test outlined in the 1972 amendments was not intended to apply to employees injured while on navigable waters because such injuries would have been covered under the pre-1972 version of the LHWCA, which contained only a "situs" requirement. *Perini*, 459 U.S. at 324, 74 L. Ed. 2d at 485, 103 S. Ct. at 650-51; see also *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 424 n.10, 84 L. Ed. 2d 406, 415 n.10, 105 S. Ct. 1421, 1428 n.10 (1985) ("This view of 'maritime employment' does not preclude benefits for those whose injury would have been covered before 1972 because it occurred 'on navigable waters.' [Citation.]"); *Fleischmann*, 137 F.3d at 135 ("Because Congress

---

[5]Since *Northeast Marine Terminal Co.* was decided, Congress has again amended the definition of "employee" to exclude from the coverage of the LHWCA other classes of individuals. See 33 U.S.C. §902(3) (2000). Claimant does not suggest that he falls into any of these excluded classes, and they are not relevant to our analysis.

intended the 1972 amendments to expand the scope of coverage, an employee can still establish coverage by demonstrating that he or she satisfies the situs test as it existed before it was expanded by the 1972 amendments, without having to make any further showing regarding status as an employee under §902(3)"); *Harwood v. Partredereit AF 15.5.81*, 944 F.2d 1187, 1191 (4th Cir. 1991) ("We hold that seaward coverage under the LHWCA does not depend on the nature of the worker's duties. The 1972 amendments to [the] LHWCA do not affect the pre-1972 meaning of 'maritime employment' as to workers injured on navigable waters of the United States, because one injured on navigable waters in the course of his employment satisfies both the pre- and post-1972 LHWCA meaning of 'maritime employment' ").

The main impact of the 1972 amendments to the LHWCA was felt in the sphere of land-based injuries. The Supreme Court held that the 1972 amendments were intended to "supplement[ ], rather than supplant[ ], state compensation law." *Sun Ship*, 447 U.S. at 720, 65 L. Ed. 2d at 463, 100 S. Ct. at 2436. As a result, the sphere of concurrent jurisdiction expanded so that states could apply their workers' compensation scheme to land-based injuries falling within the LHWCA. Thus, since *Davis* first adopted a sphere of concurrent jurisdiction under the "twilight zone" theory, the regime of concurrent jurisdiction has expanded while the area of exclusive jurisdiction under the LHWCA has contracted. To summarize, then, in the wake of *Sun Ship*, exclusive jurisdiction under the LHWCA is available only with respect to injuries sustained on navigable waters by maritime employees whose employment is not "local" in nature, *i.e.*, for a worker who is injured upon navigable waters while performing a traditional maritime activity. *McElheney v. Workers' Compensation Appeal Board*, 908 A.2d 960, 964 (Pa. Commw. 2006), *aff'd*, 596 Pa. 48, 940 A.2d 351 (2008); *McCoy*, 335 Ill. App. 3d at 728-29; *Wells*, 277 Ill. App. 3d at 386-87. However, concurrent jurisdiction under both the LHWCA and state workers' compensation statutes exists for maritime-but-local injuries occurring on navigable waters, "doubtful" cases that fall within the "twilight zone,"[6] and for land-based injuries that meet the situs and status tests set forth in the 1972 amendments to the LHWCA. See *McElheney*, 908 A.2d at 964; *Wells*, 277 Ill. App. 3d at 386-87; 9 A. Larson & L. Larson, Worker's Compensation Law §145.07[4], at 145—125 through 145—126 (2007).

---

[6]*Sun Ship* reaffirmed the continued existence of a "twilight zone" in which there is concurrent jurisdiction under the LHWCA and state workers' compensation law, as well as *Calbeck*'s finding of concurrent jurisdiction under the maritime-but-local doctrine. *Sun Ship*, 447 U.S. at 719-20, 65 L. Ed. 2d at 462-63, 100 S. Ct. at 2436.

As the foregoing history illustrates, in determining whether the LHWCA applies to a particular employee, a dual inquiry is used. First, a court must determine if the employee was working on navigable waters at the time of his injury. See *Herb's Welding, Inc.*, 470 U.S. at 424 n.10, 84 L. Ed. 2d at 415 n.10, 105 S. Ct. at 1428 n.10; *Fleischmann*, 137 F.3d at 135; *Harwood*, 944 F.2d at 1191. If so, and the employee establishes the remainder of the LHWCA's requirements, there is jurisdiction under federal law. See *Perini*, 459 U.S. at 324, 74 L. Ed. 2d at 485, 103 S. Ct. at 650-51; *Harwood*, 944 F.2d at 1191. If the worker was not injured on navigable waters, he must meet the "situs" and "status" requirements established in the post-1972 version of the LHWCA to obtain coverage under federal law. That is, the employee meets the "situs" requirement by establishing that his injury occurred at one of the locations enumerated in section 903(a) of the LHWCA (33 U.S.C. §903(a) (2000)) and the "status" requirement by showing that he was engaged in "maritime employment" (see 33 U.S.C. §902(3) (2000)) at the time the injury was sustained.

We now turn to the jurisdictional question presented here, beginning with a determination of whether coverage under the LHWCA is available to claimant. In *Perini*, the Supreme Court set forth a test to determine whether an employee is injured upon the actual navigable waters under the pre-1972 version of the LHWCA. *Perini*, 459 U.S. at 306-07, 74 L. Ed. 2d at 474, 103 S. Ct. at 641-42. First, the worker has to show that he did not fall within the category of employees excluded from coverage. Second, the worker has to establish that his injury arose out of and in the course of his employment. Third, the worker has to be employed by an employer who had at least one worker employed in maritime employment upon the navigable waters of the United States. Finally, the worker has to establish that his disability or death resulted from an injury occurring upon the navigable waters of the United States.[7]

Applying the test enunciated by the Supreme Court in *Perini*, we find that claimant is eligible for coverage under the pre-1972 version of the LHWCA. Claimant is not excluded from coverage because he is neither a "master or a member of a crew" nor "engaged by the master

---

[7]The test set forth in *Perini* actually consisted of five parts. However, as noted above, the fifth element, which required the injured worker to show that recovery was "not validly *** provided by State law" pursuant to section 903(a) of the LHWCA (33 U.S.C. §903(a) (1927)), was effectively read out of the statute in *Calbeck* prior to claimant's injury in this case. See *Perini*, 459 U.S. at 314, 74 L. Ed. 2d at 479, 103 S. Ct. at 645; *McCoy*, 335 Ill. App. 3d at 727.

to load or unload or repair any small vessel under eighteen tons net." Therefore, by exclusion, claimant qualifies as an "employee" under the pre-1972 version of the LHWCA. See 33 U.S.C. §902(3) (1927). In addition, the arbitrator determined that claimant's injury arose out of and in the course of his employment, and respondent does not challenge this finding on appeal. Moreover, claimant was employed by an employer who has at least one worker employed in maritime employment upon the navigable waters of the United States. In this regard, we point out that respondent is a company that offers services, including marine repair and ship rebuilding, businesses that the Supreme Court has found to qualify as maritime employment. See *John Baizley Iron Works v. Span*, 281 U.S. 222, 232, 74 L. Ed. 819, 822, 50 S. Ct. 306, 308 (1930) ("Repairing a completed ship lying in navigable waters has direct and intimate connection with navigation and commerce"). Finally, claimant's injury occurred upon the navigable waters of the United States. At the time of the accident, claimant was aboard a vessel floating in the Mississippi River. In sum, claimant was injured during the course of his employment on navigable waters while employed by a statutory "employer." Thus, he qualifies for coverage under the LHWCA.

While jurisdiction under the LHWCA is clear, the more crucial question is whether there is also jurisdiction under the ILWCA. As noted at the beginning of our analysis, claimant asserts that his claim falls within the "twilight zone" because, although he was injured while on navigable waters, his position was "maritime but local." Thus, claimant insists, jurisdiction is proper under either federal law or state law. We disagree.

The parameters of the "twilight zone" and the "maritime but local" doctrine are not well defined. Although they are related, they are separate theories of concurrent jurisdiction. See *Calbeck*, 370 U.S. at 128, 8 L. Ed. 2d at 377, 82 S. Ct. at 1204 (noting that *Davis*, which created the concept of a "twilight zone," was not predicated on the ground that the employment was "maritime but local"). The "twilight zone" applies to areas in which there are "doubtful and difficult factual questions." *Davis*, 317 U.S. at 257, 87 L. Ed. at 251, 63 S. Ct. at 229; see also *Wells*, 277 Ill. App. 3d at 383; *Garrisey v. Westshore Marina Associates*, 2 Wash. App. 718, 724, 469 P.2d 590, 594 (1970). We have defined the bounds of the "twilight zone" by exclusion, stating that the doctrine "does not apply to employees who are engaged in traditional maritime employment and are injured over navigable waters." *Wells*, 277 Ill. App. 3d at 383. In contrast, it has been held that a claim falls within the "maritime but local" doctrine if the worker's injury occurs upon the navigable waters of the United States,

the injured worker's employment has no direct connection to navigation or commerce, and the application of local law would not materially affect the uniformity of maritime law. See *Perini*, 459 U.S. at 306, 74 L. Ed. 2d at 474, 103 S. Ct. at 641. In this case, we find that claimant's employment does not fall within either the "twilight zone" doctrine or the "maritime but local" doctrine.

This claim does not fall within the "twilight zone" because this is not a "doubtful" case. See *Wells*, 277 Ill. App. 3d at 387-88 (pointing out that employees engaged in traditional maritime activities who are injured over navigable waters fall outside the "twilight zone"). As explained above, if an employee is injured on navigable waters while engaged in a traditional maritime activity, jurisdiction under the LHWCA is exclusive. This is such a case. At the time of his injury, claimant was engaged in ship repair upon the navigable waters of the United States. Ship repair is a traditional maritime activity. *John Baizley Iron Works*, 281 U.S. at 232, 74 L. Ed. at 822, 50 S. Ct. at 308; see also *Flowers v. Travelers Insurance Co.*, 258 F.2d 220, 222 (5th Cir. 1958); *Wellsville Terminals Co.*, 532 Pa. at 338, 632 A.2d at 1308.[8] The fact that claimant was merely preparing the ship for repair does not convert this into a "twilight zone" case. Claimant testified that employees in the "gas free plant" were responsible for removing hazardous materials such as oil, water, gasoline, and diesel fuel from the bottom of vessels before they are placed in dry dock for repair. By removing hazardous materials from the work environment, the gas-

---

[8]We are cognizant that the Supreme Court's position on whether ship repair is a traditional maritime activity has, at times, appeared inconsistent. For instance, in *Bethlehem Steel Co. v. Moore*, 335 U.S. 874, 93 L. Ed. 417, 69 S. Ct. 239 (1948), the Supreme Court, in a *per curiam* order, let stand a state court decision (see *Moore's Case*, 323 Mass. 162, 80 N.E.2d 478 (1948)) allowing a ship repairman to collect benefits under a state workers' compensation scheme. Similarly, in *Baskin v. Industrial Accident Comm'n*, 338 U.S. 854, 94 L. Ed. 523, 70 S. Ct. 99 (1949), the Supreme Court, also in a *per curiam* order, remanded the matter for reconsideration in light of *Bethlehem Steel Co*. The state court in *Baskin* had originally denied the request of the claimant, who was a ship repairman, to seek benefits under the state worker's compensation law (*Baskin v. Industrial Accident Comm'n*, 89 Cal. App. 2d 632, 201 P.2d 549 (1949)), a situation it remedied on remand from the Supreme Court (see *Baskin v. Industrial Accident Comm'n*, 97 Cal. 2d 257, 217 P.2d 733 (1950)). We note that *Bethlehem Steel Co*. and *Baskin* are distinguishable in that a great deal of the claimants' time in those cases was spent on shore. In contrast, according to claimant's testimony, his duties involved working aboard vessels on navigable waters. Thus, this case is more aligned with *John Baizley Iron Works*, 281 U.S. 222, 74 L. Ed. 819, 50 S. Ct. 306.

free-plant employees ensure the safety of the workers repairing the vessels. Undoubtedly, then, these employees are "engaged in an activity that is an integral part of and essential to" the overall process of ship repair. *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 47, 107 L. Ed. 2d 278, 287, 110 S. Ct. 381, 385-86 (1989). Thus, claimant does not fall within the "twilight zone." See also *Flowers*, 258 F.2d at 222 (noting, "[B]oth before and since the time of *Davis*, the doing of repair work on an existing vessel has been treated as so clearly maritime in nature that attempted application of State compensation laws would collide with that essential uniformity which was the very breath of *Jensen*").

We also find unpersuasive claimant's attempt to shoehorn his employment into the "maritime but local" sphere. Claimant suggests that he falls within the "maritime but local" doctrine because he is not a longshoreman and has never engaged in any duties of a longshoreman; he is not a member of the longshoremen's union; respondent is a "strictly local" company; "portions" of respondent's business are land based and "purely local"; claimant's only duties are cleaning or vacuuming barges; he clocks in and out at Hartford, Illinois, and receives his paycheck there; when he performs his duties the vessels are tied to land and his power source comes from utilities which are strictly land based; and at no time has he ever worked on a moving barge. We are not persuaded by any of these claims.

First, the fact that claimant is not a longshoreman, has never performed any longshoring duties, and is not a member of the longshoremen's union is irrelevant. While longshoring is an example of a traditional maritime activity (see *Wells*, 277 Ill. App. 3d at 386), it is not the only such activity. As noted above, ship repair has also been classified by the United States Supreme Court as a traditional maritime activity. *John Baizley Iron Works*, 281 U.S. at 232, 74 L. Ed. at 822, 50 S. Ct. at 308. Moreover, membership in a particular union has never been deemed a touchstone in determining the exclusivity of jurisdiction under the LHWCA. See *Northeast Marine Terminal Co.*, 432 U.S. at 268 n.30, 53 L. Ed. 2d at 336 n.30, 97 S. Ct. at 2359 n.30 ("We cannot assume that Congress intended to make union membership the decisive factor. The vagaries of union jurisdiction are unrelated to the purposes of the [LHWCA]"). Second, we are unconvinced that respondent is a "strictly local" company as claimant suggests. There is no evidence in the record supporting such an assertion. Moreover, the name of respondent's business—*National* Maintenance and Repair—as well as its location on the Mississippi River, one of the longest rivers in the United States and one of the most important transportation channels in the interior of the country, would seem to

belie such a claim. Third, that "portions" of respondent's business are land based and "purely local," that claimant clocked in and out at Hartford, and that he received his paycheck there are not determinative. Claimant does not suggest that *his* employment is "purely local." Moreover, as we note above, ship repair has been categorized by the Supreme Court as a traditional maritime activity which has a "direct and intimate connection with navigation and commerce." *John Baizley Iron Works*, 281 U.S. at 232, 74 L. Ed. at 822, 50 S. Ct. at 308; see also *Wells*, 277 Ill. App. 3d at 387 (rejecting similar claims). Fourth, the fact that the vessels upon which claimant works are somehow connected to land does not make his employment land based. See *Wellsville Terminals Co.*, 534 Pa. at 338, 632 A.2d at 1308 (dismissing the fact that the barge upon which the claimant was injured was tethered to the shore as "an extraordinarily tenuous connection with the land" because it is not uncommon for ships undergoing repairs to be tied to the land). Finally, there is no requirement that the vessel upon which employee works be moving. It is sufficient that claimant worked upon the navigable waters of the United States. Because claimant has not established that his employment lacks a direct connection to navigation or commerce and that the application of local law would not materially affect the uniformity of maritime law, we conclude that his employment does not fall within the "maritime but local" doctrine.

In sum, we find that the Commission did not have subject matter jurisdiction to hear claimant's case. We note, however, that despite our holding, claimant is not necessarily left without a remedy. The LHWCA provides that the right to compensation thereunder is barred unless a claim is filed within one year after the injury. 33 U.S.C. §913(a) (2000). However, the statute also contains a tolling provision which, if applicable, would allow claimant to proceed under the LHWCA. 33 U.S.C. §913(d) (2000) (providing, "Where recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and that the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter, the [one-year statute of limitations] shall begin to run only from the date of termination of such suit"); see also *Ingalls Shipbuilding Division, Litton Systems, Inc. v. Hollinhead*, 571 F.2d 272 (5th Cir. 1978).

### III. CONCLUSION

For the reasons set forth above, we affirm the judgment of the

circuit court of Madison County, which set aside the decision of the Commission.

Affirmed.

McCULLOUGH, P.J., and GREIMAN, HOLDRIDGE, and DONO-VAN, JJ., concur.