FIFTH DIVISION

Nos. 1-08-1632; 1-08-1633; 1-08-2122 (Cons.)

| | | |
|---|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| NIKEA EDMONSON, DEPARTMENT OF EMPLOYMENT SECURITY, DIRECTOR OF EMPLOYMENT SECURITY, J. HUNT BONAN, STANLEY L. DRASSLER, JR., and WILLIAM J. NOLAN, | ) ) ) ) ) ) | No.     07 L 050740 Honorable Elmer James Tolmaire III Judge Presiding |
| Defendants-Appellees, | ) | |
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| KAREN A. BRYAN, DEPARTMENT OF EMPLOYMENT SECURITY, DIRECTOR OF EMPLOYMENT SECURITY, J. HUNT BONAN, STANLEY L. DRASSLER, JR., and WILLIAM J. NOLAN, | ) ) ) ) ) ) | No.     07 L 050741 Honorable Sheldon Gardner Judge Presiding |
| Defendants-Appellees., | ) | |
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| ROBERT ROHMAN, DEPARTMENT OF EMPLOYMENT SECURITY, DIRECTOR OF EMPLOYMENT SECURITY, J. HUNT BONAN, STANLEY L. DRASSLER, JR., and WILLIAM J. NOLAN, | ) ) ) ) ) ) | No.     08 L 050018 Honorable Alexander P. White Judge Presiding |
| Defendants-Appellees. | ) | |

Nos. 1-08-1632; 1-08-1633; 1-08-2122 (Cons.)

_____JUSTICE TULLY delivered the opinion of the court.

This action arises out of the consolidation of three appeals filed by Western and Southern Life Insurance Company (Western). Each appeal was filed from circuit court judgments affirming decisions of the Board of Review (Board) of the Illinois Department of Employment Security (IDES). The decisions found that former insurances agents of Western claiming unemployment benefits, specifically Karen A. Bryan, Nikea Edmonson, and Robert Rohman (claimants), were not exempt from covered employment under the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2006)). On appeal, Western contends that the agents were exempted under the Act and not entitled to unemployment insurance benefits.

BACKGROUND

Karen A. Bryan

Bryan filed an application for unemployment insurance benefits with IDES in July 2005. She stated that she was discharged from Western as an insurance sales representative for failing to meet minimum sales requirements. Western filed an employer protest to the application. An IDES claim adjudicator subsequently determined that Bryan was eligible to receive benefits because she was not discharged for misconduct, as used in the Act.

Western subsequently appealed the decision and argued for the first time that Bryan was not its employee and therefore not entitled to unemployment benefits. Western argued that section 228 of the Act (820 ILCS 405/228 (West 2006)) provides that an insurance agent is not an employee if the agent's remuneration is solely through commission. In support, Western

2

submitted a copy of its sales representative agreement with Bryan as well as a schedule of commissions. The agreement indicated that once Bryan had worked at least 26 weeks, she would be entitled to an annual vacation ranging from one to five weeks based on length of service. An addendum was also included which stated that Bryan would be paid a $600 weekly salary for the first 13 weeks of employment. A 52-week "validation period" would follow where she would be compensated according to the schedule of commissions. The schedule of commissions provided that Bryan would be paid one - thirteenth of a pooled commission fund on a weekly basis. During the validation period, if her weekly share was less than her $600 weekly starting salary, Bryan would receive an additional supplement to reach that figure. After the validation period, Bryan would receive the weekly one - thirteenth of the commission fund but without payment of the supplement. Furthermore, other monthly withdrawals could be requested from a production/legion incentive commission account after the validation period. The agreement also provided that should Bryan be terminated, Western would keep the remaining funds contained in the account balance.

A hearings referee affirmed the claims adjudicator's decision that Bryan was entitled to benefits finding that Bryan had not engaged in any misconduct. Western appealed to the Board. The Board subsequently affirmed the referee's decision regarding the issue of misconduct but remanded the matter to the local IDES office for a determination regarding the section 228 issue. The local office subsequently determined that Bryan was a covered employee of Western and was therefore eligible for benefits. The circuit court later remanded the matter to IDES for a hearing regarding that determination. Bryan testified that, in addition to commissions, she

received vacation pay, medical and dental benefits, a pension plan after five years of service, life insurance, and death benefits. Bryan also testified that she received bonus gifts picked from a catalog and trips if she earned a certain amount of commission.

Tim McCoy, an assistant vice president with Western, testified that Bryan would still receive the same weekly one - thirteenth share the commission fund should she use vacation days or sick leave. However, if more than five sick days were used in a year, Bryan would not be paid for the additional days. McCoy acknowledged that certain gifts and awards are given by Western but could not state whether Bryan had been a recipient of one.

After the hearing, a referee issued a decision which first concluded that although Western lacked party status or appeal rights regarding the section 228 issue, IDES had the authority to address it *sua sponte*. Among its findings, the decision stated that it was undisputed that Bryan received a salary for the first 13 weeks of her employment. It also stated that for the following 52 weeks, she received a supplementary payment should her commission earnings be under $600 and that she received gifts and awards based on her performance. The decision then concluded that Bryan was not remunerated solely by way of commissions. It also stated that even if only Bryan's unemployment base period could be considered, she still received remuneration in addition to commissions. Western appealed the decision to the Board, which ultimately affirmed the referee's decision. Western then filed a complaint for administrative review of the Board's decision in the circuit court, where the decision was affirmed. Western timely appealed.

Nikea Edmonson

4

In July 2006, Nikea Edmonson filed an application for unemployment insurance benefits. An IDES claims adjudicator denied her application stating that she did not have qualifying wages during her base period. Western filed a subsequent employer protest in which it argued that Edmonson had been discharged for misconduct and was also paid solely by commission. IDES informed Western it had already found Edmonson to be ineligible for benefits.

Edmonson filed an appeal from the claims adjudicator's decision. An IDES referee conducted a hearing where Edmonson testified that in addition to commissions, she received vacation, holiday, and sick pay, medical and vision benefits, a pension plan, life insurance, and death benefits. She further testified that she was given awards and incentives in the form of cash, restaurant coupons, and gift cards. She also stated that she received a pen and plaques for her service. Edmonson's sales representative agreement contained the same provisions as Bryan's regarding vacation and account balance forfeiture upon termination. Edmonson's compensation, detailed in an addendum, was similar in form to Bryan's. It was agreed that Edmonson would be paid a $400 weekly salary for the first three weeks of employment. Following that, Edmonson would be compensated according to the schedule of commissions similarly to Bryan except that for the next 49 weeks, if Edmonson's weekly one - thirteenth share of the commission fund was less than $400, Western would supplement it to reach that figure. After 52 weeks of employment, Edmonson would continue to receive her weekly one - thirteenth share but with no supplement. The referee determined that Edmonson was not remunerated solely by way of commission stating reasons similar to those in Bryan's case. The decision was affirmed by the Board on appeal and also by the circuit court on administrative review. Western timely appealed.

5

Robert Rohman

In February 2007, Robert Rohman filed an application for unemployment benefits. Rohman's application was initially granted but was subsequently denied after a claims adjudicator concluded Rohman was paid solely by commission. Rohman appealed in a subsequent hearing and testified that in addition to commissions, he received vacation pay, holiday pay, health insurance, a 401(k) plan to which Western contributed, life insurance, and death benefits. He also stated that his sales manager gave him performance incentives including a DVD player, cash, and lunches. Tim McCoy, who had also testified in Bryan's case, testified that because the managers' compensation is based on their agents' performance, some managers offered performance incentives "out of their own pocket." For example, McCoy stated that he did not believe Western supplied the funds to pay for Rohman's DVD player.

Rohman's sales representative agreement also contained the same provisions as Bryan's and Edmonson's regarding vacation and account balance forfeiture upon termination. Rohman's compensation was also detailed in an addendum and was similar in form to Bryan's and Edmonson's. It was agreed that Rohman would be paid a $475 weekly salary for the first three weeks of employment. The remainder of the addendum and schedule of commissions were similar to those received by Edmonson.

A referee then issued a decision finding that Rohman was not remunerated solely by way of commission for similar reasons in Bryan's and Edmonoson's cases. It was also noted that even if incentives were given independently and out-of-pocket, Western knew of the practice, did not object to it, and thereby benefitted from the increased production it generated. Western appealed

6

but the Board ultimately affirmed the decision. Western then filed a complaint for administrative review in the circuit court but the circuit court also affirmed the Board's decision. Western timely appealed and this court subsequently consolidated Bryan's, Edmonson's, and Rohman's cases into the instant appeal.

ANALYSIS

Western contends that the Board erred in determining that the claimants were eligible to receive unemployment benefits.

On appeal from a decision regarding unemployment compensation benefits, it is the duty of this court to review the decision of the Board, rather than of the circuit court. Messer & Stilp, Ltd. v. Department of Employment Security, 392 Ill. App. 3d 849, 854 (2009). The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204-05 (1998). An administrative agency's determinations as to questions of facts are deemed *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence. Messer & Stilp, Ltd., 392 Ill App. 3d at 855. Factual findings are against the manifest weight of the evidence if the opposite conclusion is clearly evident. Belvidere, 181 Ill. 2d at 204. The Board's conclusions on questions of law are reviewed *de novo*. Czajka v. Department of Employment Security, 387 Ill. App. 3d 168, 173 (2008). However, despite not being bound by an administrative agency's interpretation of the law, a reviewing court should afford substantial deference to the agency's determination of a statute that the agency administers and enforces.

7

Nos. 1-08-1632; 1-08-1633; 1-08-2122 (Cons.)

McDougall v. White, 355 Ill. App. 3d 483, 486 (2005). Mixed questions of law and fact are reviewed under the clearly erroneous standard. Belvidere, 181 Ill. 2d at 205. A mixed question is one involving an examination of the legal effect of a given set of facts, that is, where the facts and law are established and the issue is whether the facts satisfy a certain statutory standard. Messer & Stilp, Ltd., 392 Ill. App. 3d at 855.

The purpose of the Act is to provide economic relief to those who are involuntarily unemployed, through the collection of compulsory contributions from employers and the payment of benefits to eligible unemployed persons. 820 ILCS 405/100 (West 2006); SMRJ, Inc. v. Russell, 378 Ill. App. 3d 563, 572 (2007). Under the Act, an employer's liability for making contributions and an individual's eligibility for benefits is dependent, in part, on the existence of an "employment" relationship between the two. SMRJ, Inc., 378 Ill. App. 3d at 573.

Plaintiff first argues that payments made prior to what is termed a base period cannot be considered under section 228 of the Act. Section 228 of the Act provides an exemption to the definition of "employment" and states that "[t]he term 'employment' shall not include services performed by an individual as an insurance agent or insurance solicitor, if all such services performed by such individual are performed for remuneration solely by way of commission." 820 ILCS 405/228 (2006). A "base period" is defined as the first four of the last five completed calendar quarters immediately preceding the benefit year. 820 ILCS 405/237(A) (West 2006).

Claimants in this case were given guaranteed minimum payments in varying amounts for the first 13 weeks of employment and it is uncontested that those payments constituted remuneration other than commission under the Act. Plaintiff argues that the payments must be

8

disregarded because they were made prior to each claimant's respective base period. However, section 228 contains no language dictating the time frame to which it is applicable or otherwise restricting its applicability only to the base period. The term "base period" does not appear in section 228 and is actually defined in a later section in the Act (820 ILCS 405/237 (West 2006)). Therefore, we are reluctant to read such a specific time limitation into section 228 when it has been explicitly held that a court cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature. In re Michelle J., 209 Ill. 2d 428, 437 (2004).

Western also notes that section 500(E) of the Act provides that only wages paid during the base period are used to determine a claimant's eligibility for benefits. See 820 ILCS 405/500(E) (West 2006). Western argues that section 500(E) implies a particular time frame to be used under section 228. However, section 500(E) does not discuss exemptions to employment or address what constitutes employment under the Act. Instead, section 500(E) is a brief section which only provides a minimum wage that must be earned in order for a claimant to be eligible for benefits. In light of our findings, we believe that it was proper for the Board to consider the guaranteed minimum payments made to claimants in determining whether they were exempted from the term "employment" under the Act. Accordingly, we find that the claimants were not exempted under section 228.

Our holding in the prior discussion regarding section 228 is sufficient by itself to affirm the Board's decision because the fixed salary provided to claimants removed them from the exemption conditions contained in section 228. Nevertheless, we will address the remainder of

Western's arguments for the sake of completion. Western next argues that the paid holidays, vacation, and sick days claimants were entitled to did not constitute remuneration by way other than commission and thus did not serve to remove claimants from the purview of the section 228 exemption..

While the Act does not define "remuneration", section 234 provides some assistance. Section 234 defines "wages" as "every form of remuneration for personal services, including salaries, commissions, bonuses, and the reasonable money value of all remuneration in any medium other than cash." 820 ILCS 405/234 (2006). "Remuneration" is defined broadly in Black's Law Dictionary as "[p]ayment; compensation." Black's Law Dictionary 1409 (9th ed. 2009). Black's Law Dictionary, in pertinent part, defines "compensation" as "[r]emuneration and other benefits received in return for services rendered," and includes a subsequent comment stating that it "includes wages, stock option-plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and expense reimbursement." Black's Law Dictionary 322 (9th ed. 2009).

In the instant case, the agreements provided that work attendance was mandatory unless an absence was authorized. An unauthorized leave of absence exceeding two days without notice was sufficient to provide a cause for termination without notice. However, provisions in the agreements provided for leaves of absence without requiring the usual authorization. During that time off, claimants were still entitled to the weekly one-thirteenth distribution from the pooled fund. Western argues that such remuneration was by way of commission because the payments were still paid from the commissions earned by the agents. However, the referees' findings were

generally silent on that specific argument. Instead, it was reasoned that such time off constituted remuneration apart from commission because the conferred benefit was the actual right to time off without having to seek a leave of absence. This was reasoned to constitute "an additional *quid pro quo* *** in exchange for services rendered." For similar reasons, we agree with the analysis and adopt it. The time off claimants were entitled to here was a benefit in and of itself. There is certainly some value of being able to take time off without authorization or fear of termination regardless if claimants were still paid or not. For example, consider two contracts, both of which terminate an employee should a work day be missed. However, one contract allows a leave of absence for 5 days and another allows 15 days, both leaves are unpaid but there is no risk of termination or need for authorization. The second contract is more desirable, or provides more benefits, than the other. In this case, claimants were allowed time off outside of any requirement for work attendance and were still entitled to the weekly one-thirteenth share paid out during a normal work week. Should an agent exceed his or her time off allotment and require more time off, he or she would be required to seek authorization (or risk termination) and would not be entitled to any pay for those additional days off. We acknowledge Western's assertion that the payment is from a commission pool and not Western itself. However, it is not the payment but the time off itself that we and the referees consider remuneration, a conclusion which Western has not disputed. Therefore, under these circumstances, we find that the paid holidays, vacation, and sick days claimants were entitled to constituted remuneration by way other than commission.

Western next argues that the provision of insurance benefits and retirement benefits

11

should not be considered in evaluating a claimant's status under section 228. In the instant case, Western provided various medical benefits, including dental and vision insurance, life insurance, death benefits, a pension plan, and a 401(k) to which it contributed. Western argues that because section 235 of the Act excludes insurance benefits and retirement benefits from the definition of "wages," such benefits should not be considered in determining whether the section 228 exemption applies. However, the word "wages" does not appear in section 228. Instead, section 228 states its exemption applies when an individual performs services "for remuneration solely by way of commission." 820 ILCS 405/228 (West 2006). Western argues that "wages" and "remuneration" are interchangeable in this context when the relevant statutes are read as a whole. We disagree. We acknowledge that section 234 defines "wages" and section 235 specifically excludes certain "remuneration" from the definition of "wages". However, while certain items may not be considered wages, this does not mean that those same items cease to be remuneration. There is no case law or any language within in the Act to suggest that the two terms are interchangeable or that the word "remuneration," as it appears in section 228, should be replaced with the word "wages." Western also argues for the first time that it would be against public policy to consider the various insurance and retirement benefits at issue when interpreting section 228. As a threshold matter, this argument is waived because arguments not presented at an administrative hearing or in the complaint for administrative review are waived on review. Odie v. Department of Employment Security, 377 Ill. App. 3d 710, 715 (2007). Notwithstanding waiver, we find the argument to be unpersuasive. Western argues that if one were to include insurance and retirement benefits when interpreting section 228, it would discourage insurance

12

companies from providing those benefits. While this may be true, such an interpretation would also result in the exemption under section 228 casting a wider net, at least in the short term, causing economic hardship upon a greater number of individuals that would now be ineligible to receive unemployment benefits. In other words, there are clear benefits and costs under both interpretations. Neither public policy argument is sufficiently convincing to entirely base any finding upon. Therefore, we do not find Western's public policy argument to be sufficiently convincing to force us to re-interpret section 228.

Finally, Western argues that there is no evidence that any claimant received bonuses or prizes during the base period.

As an initial matter, we acknowledge that the evidence is generally unclear as to whether they may have received any gifts or bonuses during their respective base periods, particularly as the evidence pertains to claimants Bryan and Edmonson. However, we have already found that the time frame for which remuneration is provided is not relevant under section 228. As discussed above, section 228 does not provide for a time frame for when remuneration is received in determining whether that section's exemption applies. Whether a claimant received gifts, bonuses, or awards during his or her employment is still relevant regardless of when it was given. It was established here that the claimants were all given performance incentives at some time and in various forms, including cash payments, gift cards, awards, and in Rohman's case a DVD player. The referees found that Western passively authorized the practice and benefitted from the increased productivity, a finding of fact that we see no reason to disturb. A party cannot repudiate the acts of another done on its behalf and at the same time accept the fruits and benefits

13

of those acts.  Advance Mortgage Corp. v. Concordia Mutual Life Ass'n, 135 Ill. App. 3d 477, 484 (1985).  Generally, receipt of these benefits knowing the source of the benefits and the manner of acquisition constitutes a ratification of such act unless the benefits are returned.  Advance Mortgage Corp., 135 Ill. App. 3d at 484.  Because of this, we find the performance incentives were also properly considered by the referees.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County confirming the decisions of the Board.

Affirmed.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE WESTERN AND SOUTHERN LIFE
INSURANCE COMPANY,

        Plaintiff-Appellant,

    v.


NIKEA EDMONSON, DEPARTMENT OF
EMPLOYMENT SECURITY, DIRECTOR OF
EMPLOYMENT SECURITY, J. HUNT BONAN,
STANLEY L. DRASSLER, JR., and
WILLIAM J. NOLAN,

        Defendants-Appellees,

   and

KAREN A. BRYAN, DEPARTMENT OF
EMPLOYMENT SECURITY, DIRECTOR OF
EMPLOYMENT SECURITY, J. HUNT BONAN,
STANLEY L. DRASSLER, JR., and
WILLIAM J. NOLAN,

        Defendants-Appellees.,

    and

ROBERT ROWMAN, DEPARTMENT OF
EMPLOYMENT SECURITY, DIRECTOR OF
EMPLOYMENT SECURITY, J. HUNT BONAN,
STANLEY L. DRASSLER, JR., and
WILLIAM J. NOLAN,

        Defendants-Appellees.,

Nos. 1-08-1632; 1-08-1633; 1-08-2122 (Cons.)

No. 1-08-1632, 1-08-1633, 1-08-2122 cons.

Appellate Court of Illinois
First District, Fifth Division

DECEMBER 24, 2009

JUSTICE TULLY delivered the opinion of the court:

TOOMIN, P.J., and, FITZGERALD SMITH, J., concur.

Appeal from the Circuit Court of Cook County

HONORABLE ALEXANDER P. WHITE

Joseph J. Hasman, David F. Schmidt and Morgan J. Milner of Chittenden, Murday & Novotny, LLC., 303 West Madison Street, Suite 1400, of Chicago, Illinois for Plaintiff-Appellant.

Lisa Madigan, Attorney General, Michael A. Scodro, Solicitor General, Paul Racette, Assistant Attorney General, 100 West Randolph Street, 12th Floor, of Chicago, Illinois for Defendants-Appellees.