THERESA DODARO, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (The City of Chicago, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—09—0447WC

Opinion filed August 3, 2010.—Rehearing denied September 9, 2010.

GORDON, ROBERT E., J., specially concurring, joined by HOLDRIDGE, J.

James L. Kaplan, of Kaplan & Sorosky, Ltd., of Chicago, for appellant.

Joseph A. Zwick, of Hennessy & Roach, P.C., of Chicago, for appellee.

JUSTICE HUDSON delivered the opinion of the court:

As defined in the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)), the term "employee" excludes "any duly appointed member of a police department in any city whose population exceeds 200,000 according to the last Federal or State census." 820 ILCS 305/1(b)(1) (West 2000). At issue in this case is whether claimant, Theresa Dodaro, who was injured while training to become a police officer for respondent, the City of Chicago, is a "duly appointed member" of respondent's police department and therefore precluded from receiving benefits under the Act. We hold that claimant is not a "duly appointed member" of the Chicago police department. As such, we find that claimant's injuries are compensable under the Act.

## I. BACKGROUND

In October 2000, claimant began training at the Chicago Police Academy. Prior to being admitted to the academy, claimant took a

written examination and underwent physical, medical, and psychological screenings. On October 20, 2000, while participating in a training exercise, claimant injured her right leg and lower back. Claimant testified that after she was injured, she went to the Fraternal Order of Police and was told that she does not qualify for benefits under article 5 of the Illinois Pension Code (Pension Code), the legislation which governs the Policemen's Annuity and Benefit Fund for cities over 500,000 inhabitants (Police Pension Fund) (see 40 ILCS 5/5—101 *et seq.* (West 2000)). Claimant eventually resigned from the police department and sought benefits under the Act.

At the hearing on her application for adjustment of claim, claimant testified that individuals attending the police academy are referred to as "recruits" or "probationary police officers." Recruits attend the police academy between 7 a.m. and 4 p.m., Monday through Friday, and participate in both classroom and physical activities. Claimant explained that while attending the academy, each recruit wears a "standardized outfit." Claimant testified that the outfit does not include any insignia indicating that recruits are affiliated with the Chicago police department. She also related that while recruits have name tags, they do not wear a badge or carry any identification issued by the Chicago police department. Claimant testified that while attending the police academy, she was paid by respondent and that she considered herself a "city employee." Claimant also testified that funds were withheld from her wages as contributions to the Police Pension Fund.

Claimant testified that recruits are instructed that they have "no authority," that they are not police officers, and that they are "not to act like police officers." Recruits are required to keep their weapons locked up at the academy, and they are not authorized to make arrests. In addition, recruits are told that while police officers are on duty 24 hours a day, recruits are "just civilians" outside of the academy. According to claimant, while police officers are "sworn in," she did not sign or swear any oath. Nevertheless, she acknowledged signing various documents after beginning training at the police academy, including a "Law Enforcement Code of Ethics" statement.

Over respondent's objection, claimant presented the testimony of Ivan Rittenberg. Rittenberg, an attorney, testified that he worked for respondent for 32 years in various capacities, including a stint in law enforcement. Rittenberg related that he became a Chicago police officer in 1966. He was later promoted to detective, then sergeant, and eventually to lieutenant. In 1978, Rittenberg became the administrative assistant to the superintendent of police. Rittenberg subsequently became a police captain before serving as assistant deputy superinten-

dent of police. Rittenberg testified that as a result of his work for respondent, he has become familiar with the Pension Code and "with all the general orders and definitions and who is and who is not a police officer within the City of Chicago."

Rittenberg stated that individuals being trained to become police officers are referred to as "trainees," "recruits," or "probationary police officers." Whatever they are called, he opined, they are not police officers until they take an oath of office and swear to uphold the laws of the State of Illinois. Rittenberg further noted that recruits have no power to arrest on probable cause, they are not allowed to carry a gun, and they have not been issued a star (badge). Rittenberg stated that, to his knowledge, unlike a sworn officer, a recruit has always been considered an at-will employee. Rittenberg further opined that under the general orders of the Chicago police department, because a recruit is "not sworn" and does not have the power to arrest, he or she is not a police officer and would be subject to civilian injured-on-duty procedures. Thus, Rittenberg reasoned, the appropriate manner for a recruit to pursue a work-related injury would be under the Act.

John Gallagher, the executive director of the Police Pension Fund, testified on respondent's behalf. Gallagher stated that he has worked for the Police Pension Fund in various capacities since 1980 and that he has been the executive director since November 2004. Gallagher testified that the Police Pension Fund provides disability benefits to police officers who are injured while on the job and ordinary disability benefits for non-duty-related disabilities. Gallagher testified that recruits training at the police academy are required to contribute to the Police Pension Fund from the date of their initial employment with the Chicago police department. According to Gallagher, a recruit contributes 9% of his or her salary on a semimonthly basis. Gallagher testified that claimant contributed to the Police Pension Fund from the beginning of her employment through November 15, 2000. During that period, claimant's contributions totaled slightly more than $300.

Gallagher indicated that representatives from the Police Pension Fund conduct a training seminar for new recruits to provide information regarding the benefits of the Police Pension Fund. As part of this process, the recruits are asked to complete some documents, including an "information blank" and a "death benefits directive." The recruits are also distributed a booklet containing a summary of benefits. Gallagher identified an "information blank" and a "death benefit directive," both of which were signed by claimant on October 12, 2000. Gallagher testified that according to the "information blank," claimant's "appointment date" to the police department was October

10, 2000. Gallagher testified that the Police Pension Fund interprets the Pension Code such that a recruit is considered a police officer from his or her date of appointment as far as administering duty disability benefits. Therefore, Gallagher stated, it is the practice of the Police Pension Fund that new recruits injured while training are eligible to receive duty disability benefits. In fact, Gallagher was aware of at least two recruits who were receiving duty disability benefits from the Police Pension Fund as a result of injuries sustained while training at the academy. Gallagher stated that claimant had the option of applying for duty disability benefits through the Police Pension Fund as of November 2005 (the time of Gallagher's testimony) even though her injury occurred in October 2000.

On cross-examination, Gallagher acknowledged that the Chicago police department distinguishes recruits from "sworn" police officers, and he acknowledged that a recruit does not receive his or her full police powers until he or she is sworn in. Nevertheless, he reiterated his opinion that, for purposes of the Police Pension Fund, recruits are considered "police officers that make semi-monthly contributions to the fund" and that recruits are therefore entitled to injury-on-duty benefits.

Respondent also called Rachel Johnston, the deputy director of the Research and Development Division of the Chicago police department. Johnston explained that, among other things, the Research and Development Division is responsible for maintaining department policies and procedures, including all written directives. According to Johnston, the Research and Development Division divides police department employees into three categories: "sworn" personnel, "civilians," and "members." Johnston testified that a directive that refers to "sworn" personnel would include recruits. In contrast, Johnston related, a directive referencing "civilians" would never include recruits. A directive that refers to "members" would include both "sworn" personnel and "civilians." More specifically, Johnston testified that General Order 98—02, which sets forth the Chicago police department's medical policy, expressly states that a recruit who is injured on duty will be treated as a "sworn officer under the medical policy." Thus, Johnston related, a recruit who is injured at the police academy "would proceed exactly the same way as a full-duty status police officer would proceed in getting benefits under the Injury On Duty Status."

The arbitrator concluded that the exclusion in section 1(b)(1) of the Act (820 ILCS 305/1(b)(1) (West 2000)) for "any duly appointed member of a police department in any city whose population exceeds 200,000" barred claimant from receiving benefits under the Act. In

support of his conclusion, the arbitrator reasoned that respondent "afforded equal protection to [both] probationary officers [and] *** fully trained patrol officers against risks and hazards which are peculiar to the nature of police work."

A majority of the Commission reversed the decision of the arbitrator, reasoning that, with the exception of her status under the Police Pension Fund, claimant "was being viewed as an 'at will' civilian rather than a sworn police officer." Accordingly, the Commission determined that claimant fell within the definition of an "employee" under section 1(b)(1) of the Act and was eligible for benefits thereunder. Thereafter, the Commission determined that claimant's injuries arose out of and in the course of her employment with respondent. The Commission awarded claimant $16^2/7$ weeks of temporary total disability benefits (820 ILCS 305/8(b) (West 2000)), 25 weeks of permanent partial disability benefits (representing a loss of 5% of the person as a whole) (820 ILCS 305/8(d)(2) (West 2000)), and $4,338 in medical expenses (820 ILCS 305/8(a) (West 2000)). Commissioner Basurto dissented. He examined the plain language of section 1(b)(1) and concluded that, for purposes of the statutory exclusion, the legislature did not intend to distinguish between "probationary officers" and "sworn officers." On judicial review, the circuit court of Cook County set aside the decision of the Commission, finding that the phrase "duly appointed member of a police department" includes both recruits and sworn police officers. Thereafter, claimant filed the present appeal.

## II. ANALYSIS

### A. Standard of Review

Prior to addressing the merits of this appeal, we must first determine the appropriate standard of review. Claimant argues that the issue presented in this appeal presents a mixed question of law and fact, so that the appropriate standard of review is clearly erroneous. Respondent counters that the issue presented in this appeal is solely a matter of law and therefore the appropriate standard of review is *de novo*.

In workers' compensation proceedings, the Commission, an administrative agency, is the "ultimate decisionmaker." *Interstate Scaffolding, Inc. v. Workers' Compensation Comm'n*, 236 Ill. 2d 132, 145 (2010); *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 173 (2007). Accordingly, when an appeal is taken to the appellate court following entry of judgment by the circuit court on review from a decision of the Commission, we review the ruling of the Commission, not the judgment of the circuit court. See *Crow's Hybrid Corn Co. v. Industrial*

*Comm'n,* 72 Ill. 2d 168, 172 (1978) (noting that the role of an appellate court is typically limited to reviewing the decision of the Commission); *Teletype Corp. v. Industrial Comm'n,* 38 Ill. 2d 470, 472 (1967) (recognizing that the function of a court of review is to examine the findings of the Commission); *Lombard Public Facilities Corp. v. Department of Revenue,* 378 Ill. App. 3d 921, 927 (2008) (observing that an appellate court reviews the decision of the administrative agency, not the decision of the circuit court). The standard of review we apply—which determines the level of deference afforded the Commission's decision—depends on whether the issue presented on appeal is one of fact, one of law, or a mixed question of fact and law. See *Western & Southern Life Insurance Co. v. Edmonson,* 397 Ill. App. 3d 146, 151 (2009). For instance, our review of the Commission's factual findings is extremely deferential. *Baggett v. Industrial Comm'n,* 201 Ill. 2d 187, 193-94 (2002). As such, we are limited to determining whether such findings are against the manifest weight of the evidence, and we will not reject reasonable inferences of the Commission merely because we might have drawn a contrary inference on the facts in evidence. *Parro v. Industrial Comm'n,* 260 Ill. App. 3d 551, 554 (1993). Commission rulings on questions of law are not entitled to the same deference, however, and are reviewed *de novo. Lenny Szarek, Inc. v. Illinois Workers' Compensation Comm'n,* 396 Ill. App. 3d 597, 603 (2009). Our review is also *de novo* where the facts essential to our analysis are undisputed and our review involves only an application of those undisputed facts to the law. *Uphold v. Illinois Workers' Compensation Comm'n,* 385 Ill. App. 3d 567, 571-72 (2008).

Yet a third standard of review—clearly erroneous—applies when the issue presented contains mixed questions of law and fact. See *Jones v. Board of Trustees of the Police Pension Fund,* 384 Ill. App. 3d 1064, 1067 (2008). "A mixed question is one involving an examination of the legal effect of a given set of facts, that is, where the facts and law are established and the issue is whether the facts satisfy a certain statutory standard." *Western & Southern Life Insurance Co.,* 397 Ill. App. 3d at 151. The clearly erroneous standard provides some deference to the Commission's experience and expertise. *Lombard Public Facilities Corp.,* 378 Ill. App. 3d at 928. As such, under this standard, a court of review will reverse the Commission's decision only when there is evidence supporting reversal and the court of review is left with the definite and firm conviction that a mistake has been committed. *Lombard Public Facilities Corp.,* 378 Ill. App. 3d at 928.

■ In the present case, the propriety of the Commission's decision actually presents us with two separate inquiries involving two separate standards of review. Our first task requires us to interpret the mean-

ing of the statutory exclusion in section 1(b)(1) of the Act (820 ILCS 305/1(b)(1) (West 2000)) for a "duly appointed member of a police department in any city whose population exceeds 200,000 according to the last Federal or State census." This inquiry, which involves statutory interpretation, presents a question of law to which *de novo* review applies. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 254-55 (2003). Once we determine the meaning of the statutory exclusion, we must review the Commission's ultimate conclusion—its application of the exclusion to the facts of this case. This latter task requires us to employ the clearly erroneous standard of review. See *Lombard Public Facilities Corp.*, 378 Ill. App. 3d at 928.

## B. Statutory Construction

■ Having determined the appropriate standards of review, we now turn to our initial task, which, as noted above, involves an issue of statutory construction. As defined in the Act, the term "employee" excludes "any duly appointed member of a police department in any city whose population exceeds 200,000 according to the last Federal or State census." 820 ILCS 305/1(b)(1) (West 2000). Claimant argues that a recruit training to become a Chicago police officer does not fall within this statutory exclusion. According to claimant, the plain language of the exclusion applies only to an individual who has taken "a sworn oath of office" as a police officer. Respondent counters that had the legislature intended the exclusion to apply exclusively to a "sworn police officer," it would have so indicated.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Hamilton*, 203 Ill. 2d at 255. The best indication of this intent is the plain and ordinary language of the statute itself. *Hamilton*, 203 Ill. 2d at 255. Where the language of the statute itself is clear, we need not employ other aids of construction. *People v. Sheehan*, 168 Ill. 2d 298, 305 (1995). Nevertheless, in determining the plain and ordinary meaning of words, we may consult a dictionary if a word or phrase is undefined in the statute. *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 774 (2008).

At the outset, we note that the plain language of the statutory exclusion does not exempt "recruits," "probationary police officers," or "trainees." Rather, it exempts an individual who is a "duly appointed member of a police department in any city whose population exceeds 200,000 according to the last Federal or State census." 820 ILCS 305/1(b)(1) (West 2000). The parties do not dispute that the City of Chicago has more than 200,000 residents. Thus, the statutory exclusion applies to any individual who is a "duly appointed member" of the Chicago police department. We determine that the key to unlock-

ing the legislature's intent is to focus on the meaning of the word "member." Unfortunately, the Act does not define this word. Since the word is undefined in the statute, we look to its dictionary definition. *Murphy*, 381 Ill. App. 3d at 774. The word "member" is defined in relevant part as "a person who has been admitted [usually] formally to the responsibilities and privileges of some association or joint enterprise." Webster's Third New International Dictionary 1408 (2002). Thus, we find that the legislature intended the statutory exclusion to apply to individuals who have been formally admitted to the responsibilities and privileges of the Chicago police department.

## C. Application

Applying this definition to the evidence presented before the arbitrator, we conclude that the Commission's determination that the statutory exclusion did not apply to claimant and that she was therefore eligible for benefits under the Act was not clearly erroneous. There was evidence that recruits were treated like sworn police officers with respect to their eligibility for benefits under the Police Pension Fund. However, the overwhelming evidence presented at the arbitration hearing suggests that the Chicago police department does not place recruits and sworn police officers on equal footing. Indeed, to an outsider, a recruit would not even be identifiable as an employee of the police department. Recruits do not wear any insignia indicating that they are affiliated with the Chicago police department. Recruits are not issued a badge, and they do not carry identification issued by the police department. Recruits are expressly instructed that they are not police officers, that they have no authority, and that they are "not to act like police officers." In addition, recruits are required to keep their weapons locked up at the police academy, they are not authorized to make arrests, and they are considered "just civilians" outside of the police academy. In other words, a recruit does not have full police powers until he or she completes training at the police academy and is sworn in as a police officer. Here, at the time of her injuries, claimant had neither completed training at the police academy nor had she been sworn in as a police officer. As such, the totality of the evidence supports a finding that claimant was not formally admitted to the responsibilities and privileges of the Chicago police department. Accordingly, claimant was not a "duly appointed member" of the Chicago police department and she is therefore eligible for benefits under the Act.

Citing to *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 735-36 (1992), respondent claims that Rittenberg's testimony involves opinions regarding statutory construc-

tion, which is not a proper subject for expert testimony. We disagree. Rittenberg did not testify regarding the intent of the legislature in promulgating section 1(b)(1) of the Act. Instead, he merely explained why he believed that a recruit does not become a police officer until he or she takes a sworn oath of office. In particular, Rittenberg noted that a recruit is not possessed of the same duties, responsibilities, or privileges as a sworn police officer. We note that claimant testified to the same effect and respondent presented no evidence to refute these witnesses. To the contrary, Gallagher, respondent's own witness acknowledged on cross-examination that a recruit does not receive his or her full police powers until he or she is sworn in.

Respondent also insists that claimant became a "member" of the Chicago police department upon her first day at the Chicago police academy. In support of this position, respondent points out that to gain admittance to the police academy, claimant had to undergo a written test, a physical examination, a medical examination, and a psychological examination. If anything, however, compliance with these admittance requirements merely signifies that claimant became a member of the police *academy*, not the police *department*. Respondent also cites to various documents that claimant signed during her training at the police academy which refer to her as a "member" of the police department. However, these documents were drafted by respondent or the Police Pension Board. Moreover, as noted in the preceding paragraphs, looking beyond the label placed on recruits in these documents, it is clear that sworn police officers have broader powers than recruits. Thus, while respondent interprets these documents as reflecting that claimant is a "member" of the Chicago police department, an examination of these documents in light of the totality of the circumstances persuades us otherwise.

Respondent urges us to focus our analysis upon the risks posed by the employment and the protections afforded employees as a result of those risks. According to respondent, the risks faced by a recruit while training are similar to the risks sworn police officers face while patrolling the streets of the City of Chicago. Thus, respondent suggests, claimant should be classified as a "duly appointed member" of the Chicago police department and found to be ineligible for benefits under the Act. However, there was no evidence that recruits typically engage in risks exposed to sworn police officers such as patrolling the streets, making arrests, stopping motorists for traffic violations, or chasing suspects. While claimant's training exposed her to risks designed to prepare her for her duties as a sworn police officer, it is clear that the risks undertaken by a recruit and a sworn police officer are not the same.

## D. Other Issues

In her brief, claimant also argues that the Commission's findings that she sustained injuries that arose out of and in the course of her employment with respondent is not against the manifest weight of the evidence. Respondent does not respond to this argument. Therefore, we affirm the Commission's findings without further comment.

## III. CONCLUSION

For the reasons set forth above, we hold that claimant is not a "duly appointed member" of the Chicago police department for purposes of the statutory exclusion set forth in section 1(b)(1) of the Act (820 ILCS 305/1(b)(1) (West 2000)). Accordingly, claimant's injuries are compensable under the Act. We therefore reverse the judgment of the circuit court of Cook County, which set aside the decision of the Commission.

Circuit court judgment reversed; Commission decision reinstated.

McCULLOUGH, P.J., and DONOVAN, J., concur.

JUSTICE ROBERT E. GORDON, specially concurring:

I concur with the majority and I have additional comments to make. I believe that an individual is not a "duly appointed member of a police department" until he or she becomes a sworn police officer. 820 ILCS 305/1(b)(1) (West 2000).

In the text of the Workers' Compensation Act, there is no definition of "duly appointed member of a police department." Thus, without a definition, there is no way to determine the legislative intent other than by the plain and ordinary meaning of the legislators' words. *People v. Pack*, 224 Ill. 2d 144, 147 (2007) ("[t]he best indication of legislative intent is the statutory language, given its plain and ordinary meaning"). It is logical to conclude that since the legislators used the words "duly appointed member of a police department," they meant a sworn police officer who carries a gun and a badge and has the authority to make an arrest, not a recruit.

Although the Act makes no reference to a "sworn" police officer, the Act also does not expressly exclude coverage to a "recruit," "probationary officer," or "trainee." Thus, the language is ambiguous and can be susceptible to either interpretation. However, the purpose behind the Workers' Compensation Act is to provide financial protection to those whose ability to earn a living is interrupted or terminated, so the Act should be interpreted liberally. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). To accomplish the purpose of the

Act in the case at bar, the Act should be read to include coverage for police recruits, especially in the absence of specific language denying them coverage.

HOLDRIDGE, J., joins in this special concurrence.