NATIONAL MAINTENANCE AND REPAIR, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Roger Gale, Appellee).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—09—0128WC

Opinion filed November 13, 2009.—Rehearing denied December 18, 2009.

Eugene F. Keefe, of Keefe, Campbell & Associates, of Chicago, for appellant.

Todd J. Schroader and Mary E. Massa, both of Becker, Schroader & Chapman, P.C., of Granite City, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

National Maintenance & Repair (National Maintenance) appeals from an order of the circuit court of Madison County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission) awarding the claimant, Roger Gale, benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2006)). For the reasons that follow, we affirm the judgment of the circuit court.

The following factual recitation is taken from the evidence presented at the arbitration hearing.

National Maintenance operates a repair facility for barges and towboats that traverse the Mississippi River. The claimant has been employed by National Maintenance for 17 years.

On February 23, 2006, the claimant was working on a "plant barge" when an I beam fell onto his left middle finger. The claimant was taken to the emergency room, where the tip of his injured finger was amputated.

According to the claimant, the "plant barge" is held in place by mooring lines connected to the shore and a "spud," which is a two-foot-square tube that runs vertically through the barge and into the bottom of the river. Electrical supply lines also run from the shore to the "plant barge," and ramps allow vehicles to be driven onto the barge.

The "plant barge" on which the claimant was injured floats on the Mississippi River but has no motor or navigational system. The claimant admitted that it would be possible to tow the barge elsewhere by disconnecting the mooring lines, cutting the electricity, and removing the "spud." He testified, however, that the "plant barge" has not been moved since it was put in place five or six years previously.

At the conclusion of the hearing, an arbitrator found that the claimant suffered an accidental injury on February 23, 2006, arising out of and in the scope of his employment with National Maintenance. In his decision, the arbitrator specifically found that the "plant barge" was a land-based facility and, thus, there was concurrent state and federal jurisdiction over the claimant's injury. The arbitrator awarded the claimant permanent partial disability benefits at the rate of $368.32 per week for a period of 19 weeks by reason of the 50% loss of his left middle finger. The arbitrator also ordered National Maintenance to pay for certain medical expenses incurred by the claimant.

National Maintenance filed a petition for review of the arbitrator's decision before the Commission. In a decision with one commissioner dissenting, the Commission affirmed and adopted the decision of the arbitrator.

Thereafter, National Maintenance sought judicial review of the Commission's decision in the circuit court of Madison County. The circuit court confirmed, and this appeal followed.

National Maintenance contends that, because the claimant was injured while upon navigable waters and engaged in a traditional maritime activity, the federal Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. §901 *et seq.* (2000)) provides the exclusive remedy for his injuries and, as a consequence, the Commission lacked jurisdiction to award the claimant benefits under the Act. The claimant disagrees, maintaining that the federal and state courts have concurrent jurisdiction as he was on land at the time of his injury. In resolving this issue, we are asked to determine whether federal law preempts the claimant's request for state workers' compensation benefits. This is a question of law subject to *de novo* review. *Uphold v. Illinois Workers' Compensation Comm'n*, 385 Ill. App. 3d 567, 572, 896 N.E.2d 828 (2008).

Pursuant to article III, section 2, of the United States Constitution, federal courts have jurisdiction over "all Cases of admiralty and maritime Jurisdiction." U.S. Const., art. III, §2. In the 1917 decision of *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 61 L. Ed. 1086, 37 S. Ct. 524 (1917), the United States Supreme Court declared that this provision of the federal constitution bars states from applying their workers' compensation statutes to longshoremen injured on the

seaward side of the line between the land and the sea. *Jensen*, 244 U.S. at 217-18, 61 L. Ed. at 1099, 37 S. Ct. at 529-30. Following the *Jensen* decision, longshoremen injured on board a vessel in navigable waters were left without a workers' compensation remedy, while longshoremen injured on land were protected by the workers' compensation laws of the various states. *State Industrial Comm'n of the State of New York v. Nordenholt Corp.*, 259 U.S. 263, 272-73, 66 L. Ed. 933, 936, 42 S. Ct. 473, 474 (1922).

■ Shortly after deciding *Jensen*, the Supreme Court began to narrow its scope by allowing relief under state law where the injured workers' employment was maritime and yet local in character. *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 477, 66 L. Ed. 321, 324, 42 S. Ct. 157, 158 (1922); *Western Fuel Co. v. Garcia*, 257 U.S. 233, 242, 66 L. Ed. 210, 214, 42 S. Ct. 89, 90 (1921). Under the so-called "maritime but local" doctrine, a worker injured on navigable waters could receive compensation under state law if his employment had no direct connection to navigation or commerce and the application of the local compensation law would not materially affect the uniformity of maritime law. *Grant Smith-Porter Ship Co.*, 257 U.S. at 477, 66 L. Ed. at 324, 42 S. Ct. at 158; *Western Fuel Co.*, 257 U.S. at 242, 66 L. Ed. at 214, 42 S. Ct. at 90.

Seeking to further extend workers' compensation protection to maritime workers excluded by *Jensen*, Congress passed the LHWCA in 1927. When originally enacted, the LHWCA provided coverage for "disability or death [which] results from an injury occurring upon the navigable waters of the United States (including any dry dock)" so long as no coverage was provided by a state workers' compensation statute. 33 U.S.C. §903(a) (1928).

Although federal and state law were then theoretically linked together to provide complete coverage to maritime workers, the boundary at which state or federal law applied was far from obvious. As a result, injured workers were sometimes compelled to make "a perilous jurisdictional 'guess' " before filing a claim. *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates*, 459 U.S. 297, 307, 74 L. Ed. 2d 465, 474, 103 S. Ct. 634, 642 (1983). Due to this uncertainty regarding jurisdiction, the Supreme Court created a "twilight zone" into which factually questionable cases would fall and over which state laws could provide compensation. *Davis v. Department of Labor & Industries*, 317 U.S. 249, 256, 87 L. Ed. 246, 250, 63 S. Ct. 225, 229 (1942).

In 1972, Congress extended the LHWCA's jurisdictional reach landward by including within its coverage injuries occurring upon "any adjoining pier, wharf, dry dock, terminal, building way, marine

railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. §903(a) (1994). Additionally, the 1972 amendment also deleted the provision that benefits were only available if coverage was not provided by state workers' compensation statutes. See 33 U.S.C. §903(a) (1994).

In *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 65 L. Ed. 2d 458, 100 S. Ct. 2432 (1980), the Supreme Court considered whether the extension of coverage under the LHWCA to certain land-based injuries preempted claims brought under state workers' compensation statutes. Noting that Congress had not declared that federal jurisdiction over the expanded areas of coverage provided in the 1972 amendments to the LHWCA was exclusive, the Supreme Court held that the extension of federal jurisdiction to land-based injuries supplements, rather than supplants, state workers' compensation laws. *Sun Ship, Inc.*, 447 U.S. at 720-22, 65 L. Ed. 2d at 463-64, 100 S. Ct. at 2436-38.

■ In light of the Supreme Court's decision in *Sun Ship, Inc.*, concurrent state and federal jurisdiction exists over those land-based injuries falling within the coverage of the LHWCA. *McCoy v. Industrial Comm'n*, 335 Ill. App. 3d 723, 729, 781 N.E.2d 365 (2002). Nevertheless, the holding in *Jensen* that federal courts have exclusive jurisdiction over injuries suffered by workers engaged in traditional maritime activities upon navigable waters has not been overruled and, thus, remains binding. *Wells v. Industrial Comm'n*, 277 Ill. App. 3d 379, 386, 660 N.E.2d 229 (1995). As a consequence, an employee who is performing a traditional maritime function and is injured on navigable waters cannot recover benefits under this state's compensation laws. *Wells*, 277 Ill. App. 3d at 386.

In this case, the parties do not dispute that the claimant was engaged in a traditional maritime activity at the time of his injury. See *Uphold*, 385 Ill. App. 3d at 582 ("Ship repair is a traditional maritime activity"). Accordingly, the only issue presented is whether the claimant was injured on land or over navigable waters.

In *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 160 L. Ed. 2d 932, 125 S. Ct. 1118 (2005), the Supreme Court held that a watercraft will be considered a vessel within the meaning of the LHWCA so long as it is capable of being used as a means of transportation on water, as opposed to being permanently moored or otherwise rendered incapable of transportation. *Stewart*, 543 U.S. at 494, 160 L. Ed. 2d at 945, 125 S. Ct. at 1127. Because a ship long docked, anchored, or moored can be cut loose and made to sail, the crucial question is "whether the watercraft's use 'as a means of transportation on the water' is a practical possibility or merely a theoretical one. [Citation.]" *Stewart*, 543 U.S. at 496, 160 L. Ed. 2d at 947, 125 S. Ct. at 1128.

██ While National Maintenance asserts that it is physically possible to move the "plant barge" by towing it to another location, such a possibility is merely theoretical. The undisputed evidence reveals that the "plant barge" in question is affixed to the shore with mooring lines and a "spud." It also receives electricity from a land-based source, and vehicles can be driven onto the barge via ramps. The testimony at the hearing was that since being installed at this location five or six years previously, the "plant barge" had not moved, and there is no indication in the record before us that National Maintenance has any intention of ever moving the barge. Under these facts, we conclude that the "plant barge" has been permanently moored and, therefore, is not a vessel. Rather, the "plant barge" is similar to a floating dock permanently affixed to the shore—a structure traditionally considered an extension of land. See, *e.g.*, *South Port Marine, LLC v. Gulf Oil Ltd. Partnership*, 234 F.3d 58, 64 (1st Cir. 2000); *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054, 1063 n.8 (7th Cir. 1984); *Bennett v. Perini Corp.*, 510 F.2d 114, 116 (1st Cir. 1975).

In sum, we find that the claimant was injured on a land-based structure. Consequently, the Commission, in adopting the decision of the arbitrator, properly concluded that it had jurisdiction over this matter. See *Sun Ship, Inc.*, 447 U.S. at 720-22, 65 L. Ed. 2d at 463-64, 100 S. Ct. at 2436-38; *McCoy*, 335 Ill. App. 3d at 731. There being no other issues raised by National Maintenance in this appeal, we affirm the judgment of the circuit court, which confirmed the decision of the Commission.

Affirmed.

McCULLOUGH, P.J., and HUDSON, HOLDRIDGE, and DONOVAN, JJ., concur.