# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60027

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2020

Lyle W. Cayce
Clerk

MMR CONSTRUCTORS, INCORPORATED; ZURICH MUTUAL
INSURANCE COMPANY,

>    Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; HENRY T. FLORES,

>    Respondents

Petition for Review of an Order
of the Benefits Review Board

Before DAVIS, HAYNES, and OLDHAM, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner MMR Constructors appeals the Benefits Review Board's order awarding benefits to claimant Henry Flores under the Longshore and Harbor Workers' Compensation Act. Concluding that Flores was on navigable waters at the time of injury and that his case is controlled by *Perini*,[1] we AFFIRM.

---

[1] *Dir., OWCP, U.S. Dep't of Labor v. Perini N. River Assocs.*, 459 U.S. 297, 299 (1983) (hereinafter "*Perini*").

No. 19-60027

## I. BACKGROUND

The facts are straightforward and uncontested. Henry Flores worked for MMR Constructors ("MMR") as a quality assurance and control technician for electrical systems. He assisted with electrical wiring for the construction of Chevron's tension-leg platform named Big Foot.[2] While working on the platform on January 20, 2014, Flores's left foot got caught on a cable, and he tore his Achilles tendon. The parties do not dispute that the injury occurred during the course and scope of his employment.

While Big Foot is currently located at its permanent home in the outer Continental Shelf of the Gulf of Mexico, at the time of Flores's accident, it was under construction at a shipyard in Corpus Christi Bay. During construction of what would ultimately become Big Foot, the platform floated in the bay on pontoons, connected to land by steel cables and utility lines.

An Administrative Law Judge (ALJ) held a formal hearing to assess Flores's claim for benefits, both under the Longshore and Harbor Workers' Compensation Act[3] (LHWCA or the Act) and as extended by the Outer Continental Shelf Lands Act[4] (OCSLA). The ALJ initially found that, although there was "no question" Flores was injured on navigable waters, he was not a maritime employee and thus failed the LHWCA's status test under the 1972 amendments.[5] The Benefits Review Board (BRB) overturned the ALJ's order, relying on the Supreme Court's decision in *Perini* to conclude that Flores was

---

[2] Big Foot is an offshore oil platform used for deep water drilling that currently sits 225 miles south of New Orleans. It is anchored to the sea floor by over sixteen miles of tendons. Some estimates have Big Foot as high as 30 stories tall.

[3] 33 U.S.C. § 901, et seq.

[4] 43 U.S.C. § 1333(b).

[5] The ALJ also found that Flores was not entitled to compensation under the LHWCA as incorporated by the OCSLA. Because we hold that Flores is covered under the LHWCA directly, we need not reach this issue.

No. 19-60027

covered under the LHWCA because he was injured on navigable waters.[6] MMR timely filed a petition for review.

## II.  DISCUSSION

### A.  Standard of Review

This court reviews the BRB's legal conclusions de novo.[7] Because the facts here are not in dispute, "whether LHWCA coverage exists is a question of statutory interpretation and thus is reviewed as a pure question of law."[8]

### B.  Injury on Navigable Waters

The LHWCA establishes a federal statutory workers' compensation scheme providing certain maritime workers with "medical, disability, and survivor benefits for work-related injuries and death."[9] Prior to 1972, the LHWCA's "situs" requirement only extended coverage to employees injured or killed on "navigable waters of the United States (including any dry dock)."[10] When Congress amended the LHWCA in 1972, it (1) expanded the situs requirement to include certain adjoining land areas and (2) added a "status" component in 33 U.S.C. § 902(3), requiring that employees be engaged in maritime employment within the meaning of the Act.[11]

We start with the Supreme Court's decision in *Perini*, decided after the LHWCA was amended in 1972. The facts in *Perini* bear some resemblance to the facts here: an employee was denied benefits after being injured on navigable waters because he was not engaged in maritime employment and, thus, could not satisfy the status test under the LHWCA as amended in 1972.[12]

---

[6] *Flores v. MMR Constructors, Inc.*, 50 BRBS 47, 50–51 (2016).

[7] *B & D Contracting v. Pearley*, 548 F.3d 338, 340 (5th Cir. 2008).

[8] *Baker v. Dir., OWCP*, 834 F.3d 542, 545 (5th Cir. 2016).

[9] *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994).

[10] 33 U.S.C. § 903(a), 44 Stat. 1426; *see Perini*, 459 U.S. 297, 299 (1983).

[11] *Perini*, 459 U.S. at 299; 33 U.S.C. §§ 903(a), 902(3).

[12] *Perini*, 459 U.S. at 300–01.

No. 19-60027

The Supreme Court reversed.[13] It held that the 1972 amendments to the LHWCA sought to expand, not limit, coverage.[14] Before 1972, any claimant injured upon navigable waters in the course of his employment who satisfied the definition of "employee" would have been covered under the Act if employed by a statutory "employer."[15] The Court concluded that such claimants— "injured on the actual navigable waters in the course of [their] employment"— were still eligible under the amended LHWCA because the Court "consider[ed] these employees to be engaged in maritime employment."[16] Thus, these claimants satisfied the amended Act's status requirement, the other statutory provisions notwithstanding.[17]

Our first challenge is to determine whether Flores, injured on a floating platform, would have satisfied the "situs" test under the LHWCA prior to 1972. In short, if Big Foot was on navigable waters, then Flores would have been covered under the pre-1972 LHWCA, and *Perini* teaches that he would also be eligible for coverage under the amended Act, despite his inability to otherwise meet the "status" test.[18] If, however, Big Foot did not rest on navigable waters, then Flores's claim fails because he cannot satisfy the situs or the status test required by the post-1972 amendments to the LHWCA. Two pre-1972 Fifth Circuit cases are helpful in determining whether Flores was injured on navigable waters.

---

[13] *Id.* at 325.

[14] *Id.* at 299.

[15] *Id.* at 305.

[16] *Id.* at 324; *see also Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 904 (5th Cir. 1999) (en banc).

[17] *Id.*

[18] Flores's presence on navigable waters may not be "transient or fortuitous," *Bienvenu*, 164 F.3d at 908, but that issue does not present itself here.

4

No. 19-60027

First, MMR contends that because this court previously held that Big Foot is not a vessel, it must be considered an extension of land.[19] But *Williams v. Avondale Shipyards, Inc.* reveals that this case does not hinge on whether Flores was injured on a vessel.[20] In *Williams*, a claimant was injured on a not-yet-commissioned Coast Guard cutter on its final sea trial.[21] The claimant filed multiple claims for relief under the Jones Act, general maritime law, and the LHWCA.[22] The court followed settled law and first held that the Coast Guard cutter was not a vessel since it was uncompleted, thereby barring coverage under the Jones Act.[23] Despite this fact, the court held that the claimant could still seek relief under the LHWCA if injured on navigable waters of the United States as opposed to international waters.[24] *Williams*, then, stands for the solid proposition that an injury on a non-vessel located on navigable waters of the United States satisfies the situs requirement for purposes of coverage under the pre-1972 LHWCA. MMR's attempt to distinguish *Williams* fails. MMR relies upon cases that deal with whether crafts in various forms are vessels for purposes of the Jones Act or general maritime law.[25] Those cases are irrelevant for our purposes in determining coverage under the LHWCA.

---

[19] *See Baker v. Director, OWCP*, 834 F.3d 542, 545 (5th Cir. 2016).

[20] 452 F.2d 955 (5th Cir. 1971).

[21] *Id.* at 957.

[22] *Id.*

[23] *Id.* at 958.

[24] *Id.* at 959. It ultimately remanded the case to the district court to determine whether the accident occurred on navigable waters of the United States, as opposed to the high seas (since the LHWCA only extends to the former, whereas general maritime law extends to both). *Id.* at 960–61.

[25] *See, e.g., Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 122 (2013) (a house boat could not be considered a vessel because it was not designed for transportation on water); *Cope v. Vallette Dry-Dock Co*, 119 U.S. 625, 630 (1887) (a floating drydock cannot be considered a vessel); *Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 352 (5th Cir. 1998) (a rig bolted to a barge was a vessel under the Jones Act); *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978) (a floating work platform was not a vessel for purposes of the Jones Act); *Cook v. Belden Concrete Prod., Inc.*, 472 F.2d 999, 1002 (5th Cir. 1973) (a floating dry dock is not a vessel within the scope of the Jones Act or general maritime jurisdiction).

No. 19-60027

*Travelers Insurance Co. v. Shea* is also helpful in our effort to determine whether Flores was injured on navigable waters. It teaches us that, pre-1972, if an employee was injured on a floating structure permanently attached to land, he was not covered under the LHWCA.[26] In *Shea*, the claimant was injured on a floating outfitting pier, which was an extension of a ramp that had been permanently anchored to both the shore and seabed with steel pillars.[27] We determined the pier was not on navigable waters and should instead be considered an extension of land.[28] Indeed, "[i]ts permanent home was in the water, and the waters below it had been completely removed from navigation."[29] Despite the fact that it was floating, the court treated it as a pier or extension of land because it was "permanently anchored . . . for eighteen years" with no plans to ever move it from its fixed position.[30]

We have since followed this analysis, emphasizing that the extent to which a craft or pier is permanently attached to land is critical. In *Peytavin v. Government Employees Insurance Co.*, for example, the court held that a floating pontoon fastened to the shore by means of cables could not be considered an extension of land.[31] Structures typically deemed extensions of land, the court noted, "were in some manner firmly and permanently fastened to the land."[32] "A vessel moored to a dock does not become an extension of the

---

[26] 382 F.2d 344, 349 (5th Cir. 1967).

[27] *Id.* at 345–46.

[28] *Id.* at 349.

[29] *Id. See also Nat'l Maint. & Repair v. Illinois Workers' Comp. Comm'n*, 395 Ill. App. 3d 1097 (2009). The Appellate Court of Illinois there held that the barge in question was an extension of land, because it had been affixed to the shore with mooring lines and a "spud" (essentially a temporary piling) for five or six years. *Id.* at 1102.

[30] *Shea*, 382 F.2d at 349.

[31] 453 F.2d 1121, 1126 (5th Cir. 1972).

[32] *Id.* at 1125.

6

No. 19-60027

land *nor do other structures secured to the shore by cables, or other temporary means.*"[33]

From these cases, it is clear that if a craft resting on navigable waters is permanently attached to land, then the water underneath the craft is removed from navigation and is not navigable under the LHWCA.[34] While Big Foot was attached to land bordering Corpus Christi Bay, its attachment was not permanent. Big Foot was attached only temporarily while under construction—it was built to be moved offshore to drill for oil and gas in the Gulf of Mexico. Because it was not permanently attached to land, the water underneath it was not removed from navigation. Thus, Flores was injured on navigable waters and is entitled to benefits under the Act if MMR was a statutory "employer." We now turn to that question.

## C. "Employer" Requirement

Both the original and amended LHWCA define "employer" as "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States."[35] MMR argues that because neither Flores nor any other employee of MMR was engaged in "maritime employment" as defined by the post-1972 LHWCA's

---

[33] *Id.* at 1126 (quoting *Hastings v. Mann*, 340 F.2d 910, 911 (4th Cir. 1965)). *See also Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 214–15 (1969) ("Since long before the Longshoremen's Act was passed, it has been settled law that structures such as wharves and piers, *permanently affixed to land*, are extensions of the land.") (emphasis added).

[34] The Second Circuit has adopted a different test. In *Lockheed Martin Corp. v. Morganti*, 412 F.3d 407, 414 (2d Cir. 2005), the court considered whether a research barge attached to a buoy rested on navigable waters. The court did not consider the permanence of the barge. *Id.* at 415. Instead, the court held that "a person on any object floating in actual navigable waters must be considered to be on actual navigable waters" for LHWCA coverage. *Id.* at 416. The test we have established in *Shea* and *Peytavin* is not as broad as the Second Circuit's test.

[35] Longshore Harbor Workers Compensation Act of 1927, Pub. L. No. 92-576, § 2(b), 86 Stat. 1251 (Oct. 27, 1972); § 903(2)(4). Congress amended the employer definition in 1972 to reflect the expanded situs requirements, but the definition otherwise remained unchanged. *Id.*

No. 19-60027

"status" test, MMR does not qualify as a statutory "employer" under § 902(4). As set forth below, we conclude that MMR was a statutory employer.

Because *Perini* teaches us that the 1972 amendments to the LHWCA did not intend to limit coverage, the definition of both "employee" and "employer" under the Act become relevant. Before the amendments, "employee" was defined negatively to read: "[t]he term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."[36] The amended LHWCA substantially changed the definition of "employee" from a negative definition to: "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker."[37] This new definition of "employee" became the "status" test.

It is noteworthy that the pre-1972 LHWCA definition of employee did not specify the type of maritime work that qualified as "maritime employment"; we read that definition to include anyone who met the situs test, subject to the two exceptions in the "employee" definition.[38] Our pre-1972 case law confirms that if the claimant qualified as an employee under the pre-1972 Act by being injured on navigable waters where he was regularly employed, the employer also qualified as a statutory "employer" under § 902(4): the employer had at least one employee engaged in maritime employment.[39]

---

[36] 33 U.S.C. § 902(3) (1970).

[37] § 903(2)(3) (1972). The definition excludes certain employees, none of which is at issue here.

[38] § 902(3) (1970).

[39] *See Hullinghorst Industries, Inc. v. Carroll*, 650 F.2d 750, 758 n.8 (5th Cir. 1981) ("We find no decision of this circuit which holds that 'employer' status may not be predicated upon the status of the injured claimant as a maritime employee under the Act.").

No. 19-60027

In 1965, this court addressed the definition of "employer" in *Nalco Chemical Corp. v. Shea*.[40] The claimant in that case was employed as a combination airplane pilot/salesman and was injured on navigable water.[41] The claimant's sales duties required him to call on customers on rigs located on navigable waters.[42] His injury on navigable waters satisfied the Act's situs requirement, and he was an "employee" under the pre-1972 Act.[43] Important for this discussion, the statutory "employer" requirement was also satisfied—we held that to be an "employer," the LHWCA merely required that at least one of the employer's employees be engaged in maritime employment "in whole or in part."[44] The court concluded that the employee's sales activities on navigable waters amounted to "maritime employment" under § 902(4).[45] Thus, the employer had at least one employee engaged in maritime employment and was an "employer" under the Act.

In the post-1972 cases, we have followed the same analysis in our interpretation of "employer" under the LHWCA. We have held that if the injured employee meets the Act's amended definition of "employee," the employer is ipso facto a covered employer—it has at least one employee engaged in maritime employment.[46]

MMR disagrees with this analysis and contends that it is important that the post-1972 "employer" requirement of § 902(4) be enforced and Flores be required to show that MMR has at least one employee who can satisfy the post-

---

[40] 419 F.2d 572, 574 (5th Cir. 1969) (per curiam).

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *See Hullinghorst Industries, Inc. v. Carroll*, 650 F.2d 750, 758 (5th Cir. 1981) (holding the addition of an "employee" status requirement rendered the "employer" status requirement "largely tautological" since "the injured claimant himself must be engaged in maritime employment").

1972 definition of "employee." To make its argument, MMR points to language in *Perini*:

> In holding that we can find no congressional intent to affect adversely the pre-1972 coverage afforded to workers injured upon the actual navigable waters in the course of their employment, we emphasize that we in no way hold that Congress meant for such employees to receive LHWCA coverage merely by meeting the situs test, and without any regard to the "maritime employment" language. We hold only that when a worker is injured on the actual navigable waters in the course of his employment on those waters, he satisfies the status requirement in § 2(3), and is covered under the LHWCA, *providing, of course, that he is the employee of a statutory "employer,"* and is not excluded by any other provision of the Act.[47]

The Court clarified in a footnote that its holding "extends only to those persons 'traditionally covered' before the 1972 amendments."[48] It expressed "no opinion" on whether such coverage extended to workers injured while transiently or fortuitously on navigable water.[49] "Rather, our holding is simply a recognition that a worker's performance of his duties upon actual navigable waters is necessarily a very important factor in determining whether he is engaged in 'maritime employment.'"[50]

We read this language as leaving open the question of whether an employer of an employee injured after 1972 who is covered because of his injury on navigable waters (but who does not otherwise meet the status test) is an "employer" under the Act. In the footnote quoted above, the Court indicated concern about an employer unfairly being held responsible for LHWCA benefits when it had no notice its employee was working on navigable waters.

---

[47] *Perini*, 459 U.S. 297, 323–24 (1983) (emphasis added).
[48] *Id.* at 324 n.34.
[49] *Id.*
[50] *Id.*

No. 19-60027

Indeed, this court has recognized the legitimacy of such a concern.[51] To address this issue, we held that a worker injured in the course of his employment on navigable waters is not covered by the LHWCA if his presence on the water is "transient or fortuitous," so that the employer may not have notice of its potential exposure under the LHWCA.[52] It is clear, however, that the facts here do not raise this concern, because Flores had been working on Big Foot for MMR on navigable waters for several months before his injury.

We therefore hold that because Flores was regularly employed by MMR on navigable waters and, under *Perini*, meets the "employee" definition, it follows that MMR had at least one employee engaged in maritime employment. Our conclusion that we should not read the "status" test as narrowing the definition of a statutory employer is consistent with both our holding in *Nalco Chemical Corp.* and the BRB's finding.[53] Our conclusion also follows the reasoning of the Supreme Court in *Perini*: Congress sought to expand, not limit, coverage under the LHWCA with the 1972 amendments.[54] MMR was thus an employer under the Act.

## D. The Constitutionality of the LHWCA

MMR contends that applying the LHWCA to accidents with no connections to traditional maritime activity exceeds the constitutional limits of federal maritime jurisdiction.[55] To makes its argument that the Supreme

---

[51] *See Carroll*, 650 F.2d at 757 ("Congress intended that liability should be imposed only where the employer had real or constructive notice of the likelihood of coverage.").

[52] *Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 908 (5th Cir. 1999) (en banc).

[53] *Flores v. MMR Constructors, Inc.*, 50 BRBS 47, 51 (2016).

[54] *See Perini*, 459 U.S. at 315–16 (1983) (quoting *Voris v. Eikel,* 346 U.S. 328, 333 (1953)) ("We are unable to find any congressional intent to withdraw coverage of the LHWCA from those workers injured on navigable waters in the course of their employment, and who would have been covered by the Act before 1972. As we have long held, 'This Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.'").

[55] *See* U.S. CONST. art. III, § 2 ("The judicial Power shall extend to all Cases . . . of admiralty and maritime Jurisdiction . . .").

Court abrogated *Perini*, it relies on *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*[56]

MMR has failed to show that the Court in *Grubart* sought to proscribe the reach of Congress's admiralty jurisdiction concerning the LHWCA. *Grubart* articulated a jurisdictional test for maritime torts for cases brought under 28 U.S.C. § 1333(1), which states that federal district courts have original and exclusive jurisdiction over civil cases of admiralty jurisdiction.[57] The Supreme Court has explained that the test for maritime tort jurisdiction is distinguishable. "Although the term 'maritime' occurs both in 28 U.S.C. § 1333(1) and in § 2(3) of the [LHWCA], these are two different statutes 'each with different legislative histories and jurisprudential interpretations over the course of decades.'"[58] *Grubart* also addressed the Extension of Admiralty Jurisdiction Act, which expanded maritime jurisdiction to injuries occurring on land or sea caused by a vessel on navigable water.[59] The Supreme Court held in *Nacirema Operating Co. v. Johnson* that Congress did not "intend[] to amend or affect the coverage of the Longshoremen's Act" in passing the Extension Act, and that "the Act has no bearing whatsoever on [claimants'] right to a compensation remedy under the Longshoremen's Act."[60] Thus, nothing in *Grubart* suggests that the Court sought to abrogate *Perini* and limit admiralty jurisdiction under the LHWCA.

In addition, when numerous cases from the Supreme Court seemingly speak to an issue, "the Court of Appeals should follow the case which directly

---

[56] 513 U.S. 527 (1995).

[57] *See id.* at 534 ("a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and connection with maritime activity").

[58] *Perini*, 459 U.S. at 320 n.29 (quoting *Boudreaux v. American Workover, Inc.*, 680 F.2d 1034, 1035, 1050 (5th Cir. Unit A 1982)).

[59] *Grubart*, 513 U.S. at 532; *see* 46 U.S.C.A. § 30101.

[60] 396 U.S. 212, 223 (1969).

controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions."[61] Relying on *Parker v. Motor Boat Sales*, the Court in *Perini* made very clear: "when a worker is injured on the actual navigable waters in the course of his employment on those waters, he . . . is covered under the LHWCA."[62] In *Parker*, the injured worker, a janitor/porter, drowned while riding in a boat to look for hidden objects in muddy water.[63] One issue the Court had to consider was whether Congress had the authority to award compensation under the LHWCA for such a predominantly "non-maritime employee."[64] The Court held that "it is not doubted that Congress could constitutionally have provided for recovery under a federal statute in this kind of situation."[65] *Grubart*, which was decided twenty-five years ago and twelve years after *Perini*, made no mention of *Perini* or *Parker*, and the Supreme Court has not called either case into question since. Absent clear language abrogating *Perini*, we are bound by the Court's understanding of maritime jurisdiction in that case.

## III. CONCLUSION

For the aforementioned reasons, we AFFIRM the BRB's award of compensation to Flores.

---

[61] *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

[62] 459 U.S. 297, 310, 324 (1983).

[63] 314 U.S. 244, 246 (1941).

[64] *Id.* at 246, 248.

[65] *Id.* at 248. This court has similarly acknowledged the "long-standing judicial recognition of Congress' broad powers to expand the reach of admiralty jurisdiction" when discussing the constitutionality of the LHWCA. *Jacksonville Shipyards Inc. v. Perdue*, 539 F.2d 533, 545 (5th Cir. 1976), *aff'd, P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69 (1979) (intervening subsequent history omitted).